# LOUISA KELLETT

*v.*

# GEORGE S. SHEPARD et al.

*Filed at Ottawa October 31, 1891.*

1. WILL—*remainder to "heirs" construed.* A testator devised his estate to trustees in trust, and after making a provision for his widow, and some charitable bequests, directed that the remainder of his estate, real and personal, should be so managed and disposed of that one-half of the income thereof should be paid to his daughter during her life, with reversion to her children, should she have any, and in case of her death without issue, her share should go and descend to her heirs-at-law, and gave his son the balance of his estate, the income thereof until he should attain the age of thirty years, and then the whole of his share. The son and daughter both died after the probate of the will, without issue, the son dying first: *Held,* that the heirs-at-law who were to take the share of the daughter after her death without issue, were the son and the daughter of the testator who were living at the time of his death, in the absence of anything in the will to show a contrary intention.

2. In such case, the fact that the daughter, at the expiration of whose life estate the distribution was to be made, was herself one of the heirs-at-law, is no proof of a contrary intention; nor does it make any difference in the rule whether those who are heirs-at-law at the time of the testator's death are living or dead when the period of distribution arrives. Bequests of personalty, as well as devises of land, are subject to this rule of construction.

3. The estate set apart for the use of the daughter vested in her and her brother, as heirs-at-law of the testator, at the time of his decease. Although the trustees held the legal title, the equitable title was vested in the son and daughter, subject to be divested, by force of the will, in the event that the daughter should have children. The reversionary estate vested in the heirs-at-law was liable to open to let in her children, should she have any. In the meantime it subsisted in the testator's heirs, for the purpose of drawing possession to them in the event of her death without issue.

4. Ordinarily the words "heirs" or "heirs-at-law" are used to designate those persons who answer this description at the death of the testator. Hence, when the word occurs in a will it will be held to apply to those who are heirs of the testator at his death, unless the intention of the testator to refer to those who shall be his heirs at a period subsequent to his death is plainly manifested in the will. This

28—139 ILL.

construction is not changed by the fact that a life estate may precede the bequest to the heirs-at-law, nor by the circumstance that the bequest to the heirs is contingent on an event that may not happen.

5. Where a devise or bequest is made to one or more for life, with remainder to the testator's heirs or next of kin, or such persons as would take his estate by the laws of descent, the devise or bequest is to those who are heirs or next of kin at the time of the testator's death.

6. A father devised a share of his estate, vested in trustees, to his daughter, with remainder to her children, should she have any, if not, then to his heirs-at-law. At his death he left a son and daughter, the latter being the devisee of the life estate, and a widow, the mother of his children. The son died without issue, after which the daughter also died without issue : *Held*, that on the death of the son his half interest in the remainder of the share devised to the daughter descended, one-third to his sister and two-thirds to his mother, and upon the sister's death her whole interest descended to the mother, so that she took the whole of the remainder of the estate devised to the daughter.

7. SAME—*devise construed as intestate estate.* Where a testator states in his will that he intends thereby "to provide that one-half of the residue" of his estate "be set off for an income" to his daughter during her life, "and the remainder to revert to her children, should she have any," without any provision for the disposition of the remainder in case of her death without issue, the law will give it, at the daughter's death without issue, to those who were the testator's heirs-at-law at his decease, as intestate estate.

8. A devise giving precisely the same estate and interest in property as the devisee would take by descent if the devise had not been made, is void, for the reason that a title by descent is regarded as a worthier and better title than by devise or purchase.

9. REMAINDER—*whether contingent or vested.* Where a life estate is devised, with remainder to the children of the life tenant, if any, and in the event such life tenant dies without issue, then the remainder to the testator's heirs-at-law, and he leaves a son and daughter at his death, the remainder will not be a contingent one, so as to postpone the vesting in interest as well as possession until the period of distribution, as the heirs-at-law are *in esse* at the testator's death. A remainder is contingent if the persons who are to take it are not *in esse*, or are not definitely ascertained.

10. A remainder after a life estate is regarded as a vested remainder, and the possession, only, is postponed ; and the fact that the devise must open to let in after-born children is not inconsistent with the vesting of the estate in interest at the testator's death, though the vesting in possession is deferred to the period of distribution.

11. Same—*preference over contingent remainders.* The law always gives preference over contingent remainders. It does not favor the abeyance of estates. Therefore, estates in remainder vest at the earliest period possible, unless a contrary intention on the part of the testator is clearly manifested.

Appeal from the Superior Court of Cook county; the Hon. Kirk Hawes, Judge, presiding.

Mr. E. A. Otis, and Mr. Charles B. Wood, for the appellant:

Under all the provisions of the will, when fairly considered, the testator died intestate as to the reversionary interest of his estate in which his daughter had an estate for life. A devise to the heirs-at-law is void if it gives precisely the same estate that the heirs would take by descent. 4 Kent's Com. (11th ed.) 594; O'Hare on Wills, 298; *Ellis* v. *Page,* 7 Cush. 163.

The reversionary right to the property in controversy, under and by virtue of the will itself, passed to and became vested in the heirs of Nelson Stillman, who were such at the time of his death, and created a vested estate of inheritance in Charles P. and Mary Louisa, which descended to their mother, who inherited the entire estate as heir-at-law of her deceased children. A devise to his heirs or next of kin of the testator is to those who are his heirs at his death. 2 Williams on Exrs. (6th Am. ed.) 1211; 2 Jarman on Wills, 406; *Gilpin* v. *Williams,* 25 Ohio St. 283; *Bullock* v. *Downes,* 9 H. L. Cas. 1; *Cable* v. *Cable,* 16 Beav. 507; *Taylor* v. *Mocker,* 29 Ind. 443; *Abbott* v. *Bradstreet,* 3 Allen, 587; *Bates* v. *Gillett,* 132 Ill. 287.

All estates, legal or equitable, given by will should be regarded as vesting immediately, unless a contrary intention is clearly manifested. *Scofield* v. *Olcott,* 120 Ill. 362; *McCartney* v. *Osburn,* 118 id. 403.

It is a well settled rule of law in this State, that the term "heirs-at-law" includes those upon whom the law casts the estate immediately upon the death of the owner. When prop-

·erty is devised to the testator's heirs-at-law, without other designation, it passes as in case of intestacy.   *Richards* v. *Miller*, 62 Ill. 417; *Rawson* v. *Rawson*, 52 id. 62; *Alexander* v. *Masonic Aid Co.* 126 id. 558; *Kelley* v. *Vigas,* 112 id. 242.

Messrs. Jones & Hacker, for the appellees:

The widow having renounced the will can not claim under it, nor as heir of her husband, the estate not being intestate.

As to vested and contingent remainders, see *Scofield* v. *Olcott*, 120 Ill. 362; 2 Jarman on Wills, 406; *Handberry* v. *Doolittle*, 38 Ill. 202; *Ellis* v. *Page*, 7 Cush. 161; *Abbott* v. *Bradstreet*, 3 Allen, 587; *Ridgeway* v. *Underwood*, 67 Ill. 419; Fearne on Remainders, 9, 214, 215, 305.

Mr. Chief Justice Magruder delivered the opinion of the Court:

Nelson Stillman died testate on August 31, 1871, in Galena, Joe Daviess County, and his will and the codicils thereto were admitted to probate in the county court of that county on September 18, 1871.   The will is dated January 27, 1859; the first codicil bears date October 4, 1862, and the second, August 9, 1867.   The testator left surviving him his widow, Louisa Stillman, and two children, Charles P. Stillman and Mary Louisa Stillman, and no other children or descendants of children.   The widow subsequently married Thomas P. Kellett, and is the appellant herein.   The son, Charles P. Stillman, died intestate on March 10, 1883, and left no children or descendants of children; he was twice married; his first wife obtained a divorce from him for his fault, and married a man named Eldredge and is now known as Fannie Turner Eldredge; his second wife, named Louisa or Lucy, survived him and is his widow.   The daughter, Mary Louisa Stillman, married a man named George Pride, from whom she was divorced for his fault some time before February, 1887, and thereupon resumed her maiden name; she died testate on December 4,

1888, leaving her surviving no husband, nor child nor children, nor any descendants of child or children. Appellant, the widow of the testator, renounced the provisions of the will, and elected to take her dower in the realty and her share of the personalty, as allowed by law, and has long ago settled with the trustees under the will in relation thereto.

The will gives and bequeaths the whole estate to three trustees to have and to hold the same to themselves, their heirs and assigns forever, upon certain uses and trusts; the widow is to have the homestead, and the income of one third of the net residue of the estate during her life and so long as she remains unmarried; one tenth of the residue or remainder is given to three charitable societies; the will then proceeds as follows:

"*Fourthly*—All the residue and remainder of my estate, real and personal, at the time of my decease, after deducting all lawful expenses of settlement and management, to be disposed of as follows, to-wit: the one-half of the same, being one-half of the residue, to be so set apart, invested, secured and conveyed and managed so as to produce and furnish a revenue or annual income, which I direct to be paid in quarterly or half-yearly payments to my daughter, Mary Louisa, and for her sole and separate use during her natural life, and the principal of said portion so set off to be so conveyed that after her death it shall descend and go in reversion to her child or children, should she have any, but in case she died having no issue, in such case to go to and descend in reversion to my heirs-at-law. And all the residue or remainder of my net estate, real and personal, not otherwise provided for, my said wife and daughter, and for said charitable purposes before named, the principal of the same to go to and revert to and be paid over to my son, Charles Phelps, when he shall have attained to the age of thirty years, and also all of the residue of the net income or yearly profits, after the above provisions are satisfied, is to go to and be paid over to him in half-yearly

payments, to be for his use and support until he receives his portion, at the age of thirty years."

The testator wills and bequeaths to his son the reversion of the homestead on the death or marriage of the widow, and directs that the property set apart "for a revenue or income for the support of my said wife, shall, after her death, descend in reversion to my heirs at law." The will provides for an appraisement of the real and personal property by the executors at the testator's death, as a basis for settling the bequests to the said societies; it gives the trustees and executors power to sell any of the real estate, except the homestead, and invest the proceeds, or "lease the same as they may deem best for the interest of the family;" it gives them power to invest the monies of the estate, and the discretion to decide at what time "to set apart and make separate provision of property for the income to be paid to my said daughter and wife," and also the discretion, if they deem best, to keep the estate together until the son reaches the age of thirty; each provision of property is to be subject to its own portion of all lawful charges against it, such as for taxes, insurance, etc. ; the trustees are appointed "guardians of the persons and estate of my children or any of them during their minority." The testator then proceeds to say: "Should I at my decease have other children living than the two provided for, * * * my children in such case, instead of the provisions made for my daughter, Mary Louisa, and my son, Charles Phelps, shall all receive the residue of my estate, share and share alike." After appointing the trustees to be executors, he closes his will as follows: "In recapitulation, my intentions and purposes in this will are:

"*First*—To provide a home for my said wife, and after her decease or marriage, the homestead to revert to my son, Charles Phelps; also to provide an income for the support and maintenance of my said wife during her life or widowhood, and after her decease, the principal set apart for said provisions to descend in reversion to my heirs.

"*Second*—To give one-tenth of the residue of my estate to the three charitable societies named, each to receive one-third of said one-tenth.

"*Third*—To provide that one-half of the residue or remainder of my estate be set off for an income to my daughter, Mary Louisa, during her life, and the principal to revert to her children, should she have any.

"*Fourth*—To provide that the residue of my estate go to my son, Charles Phelps, when he arrives at the age of thirty years, and the net residue of the income or profits until he attains that age."

The first codicil provides that of the one tenth given to the charitable societies only $500.00 shall be given to each of them, and all of the one tenth over $1500.00, if anything, shall be invested in bonds, and the interest paid yearly or half yearly to the testator's six sisters in certain proportions during their lives, the portion of each upon her death to go to his son Charles P.; "and, after the decease of all of the above named sisters, the principal so provided shall descend and go to my said son, Charles Phelps, and to his heirs;" it also provides that the executors may, at the written request of the widow, if they shall think it for the interest of the family, sell the homestead and invest the proceeds for the widow, so long as she remains unmarried, "and, after her marriage or decease, the principal, so provided for said income, shall go to and descend to my son, Charles Phelps Stillman."

The second codicil merely provides for the mode of paying the widow dower in real estate unsold, and in its proceeds if sold, in case of her remarriage, and for the payment of the income in the one tenth, that had belonged to one of the sisters that had died, to two of the living sisters.

The debts of the testator were all paid. The dower of the widow was apportioned to her in the personal property. On June 25, 1882, the son, Charles P. Stillman attained the age of thirty years, and the trustees paid and turned over to him

all his share of the real and personal property of the estate, under the will, and made a full settlement with him and took his receipts therefor.

One of the three trustees resigned in July, 1877, and another died in October, 1882. In a proceeding thereafter begun by the remaining trustee in the Circuit Court of Cook County against Mary L. Stillman, the daughter, and the appellant and her husband, and the trustee who had resigned, and the heirs of the deceased trustee, a decree was entered on February 28, 1887, finding that the real and personal property, then remaining and vested in said trustees or their heirs, was as follows: the premises Nos. 198, 200 and 202 North Clark Street in Chicago, subject to a yearly dower of $392.00 payable to appellant; the undivided half of the premises No. 166 South Clark Street in Chicago, subject to the dower therein of appellant; a lot on East 57th Street in New York City, which had been conveyed by one Hamilton on June 3, 1881, to Mary L. Stillman; money amounting to $1693.75; and that said property and money was then held by said trustees in trust for said daughter, Mary L. Stillman, during her life, and after her death upon further trusts. The said decree appointed John A. J. Kendig trustee in place of the former trustees whose accounts were settled and approved, and directed that said money and property be paid and conveyed to said new trustee to hold for the benefit of Mary L. Stillman (subject to said dower rights) upon the same trusts and subject to the provisions of said will. The directions of the decree were subsequently carried out.

It is admitted herein by both parties, both in the pleadings and upon argument, that the premises in New York City above mentioned were obtained by said trustees from Mary L. Stillman in her lifetime in return for monies belonging to the estate, which were advanced to her at her request, "and that said premises are, in law, personal rather than real property, belonging to said estate."

The only interest, which is in controversy in this suit, is that which was set apart by the will for the use of Mary L. Stillman during her life; that interest consists of the money and the Chicago and New York property above described. The bill in the present case was filed in the Superior Court of Cook County on November 11, 1889, by the appellees herein, who are the sisters and brother and nephews and nieces of the deceased, Nelson Stillman, for the partition and distribution of said property and money among themselves and for a construction of said will. The defendants to the bill were the trustee, Kendig; Louisa Kellett, the appellant, and her husband; Daniel B. Childs, executor of the estate of Mary L. Stillman, deceased; a sister of Nelson Stillman, and certain of his nephews and nieces, and others.

The contention of appellees is that the brother and sisters and nephews and nieces of Nelson Stillman were his heirs at law when his daughter died, and are therefore owners of said money and property. The contention of appellant is that Charles P. Stillman and Mary L. Stillman, who were the testator's heirs at law at his decease, took the share in which the daughter had a life interest, and that the appellant, as heir of her son and daughter, is entitled to have all of said money and property. Appellant further contends, that, if the interest in question is to go to those who were her husband's heirs at the time of the daughter's death, she was one of such heirs, and, as such, inherited one half the realty, and all the personalty.

The decree of the court below found, that the persons, designated as heirs at law in the fourth clause of the will, were those who were such at the date of the death of Mary L. Stillman, and that appellant was entitled to all the personalty and one half of the realty, and that appellees were entitled to the other undivided one half of the realty, and that partition and distribution should be made accordingly. The appellant appeals from so much of the decree as gives any portion of the estate

to the appellees.    The appellees assign as cross-error, that the decree gave any portion of the estate to the appellant.

Manifestly, the decision of this case depends upon the construction to be given to that part of the fourth clause of the will as above quoted, which concerns the share set apart for the use of the daughter.    The will gives her a life interest in said share, and then provides, that, "after her death, it shall descend and go in reversion to her child or children should she have any; but in case she died having no issue, in such case to go to and descend in reversion to my heirs at law." As the life estate has ended, and the tenant for life died without issue, it becomes material to inquire who were the heirs at law, to whom the share in question has gone and descended in reversion.

Ordinarily, the words "heirs," or "heirs at law," are used to designate those persons who answer this description at the death of the testator.    The word, "heir," in its strict and technical import, applies to the person or persons appointed by law to succeed to the estate in case of intestacy.    (2 Black. Com. 201; *Rawson* v. *Rawson*, 52 Ill. 62.)    Hence, where the word occurs in a will, it will be held to apply to those who are heirs of the testator at his death, unless the intention of the testator to refer to those, who shall be his heirs at a period subsequent to his death, is plainly manifested in the will. This construction or definition is not changed by the fact, that a life estate may precede the bequest to the heirs at law, nor by the circumstance that the bequest to the heirs is contingent on an event that may or may not happen.    (2 Jarm. on Wills, 672, R. & T. 5th Am. Ed.; 2 Wms. on Ex'ors. 1211, 6th Am. Ed.)

In the case at bar, the heirs at law who were to take the share, set apart to the daughter, after her death without issue, were the son, Charles P., and the daughter, Mary L., who were living at the time of the testator's death and were his only heirs at law at that time, unless it shall appear that a

contrary intention is plainly indicated by the will, construed as a whole and with reference to all its provisions. It is no proof of such contrary intention, that the daughter, at the expiration of whose life estate the distribution was to be made, was herself one of the heirs at law. Nor does it make any difference in the correctness of this construction, whether those, who are heirs at law at the time of the testator's death, are living or dead when the period of distribution arrives. Bequests of personalty, as well as devises of real estate, are subject to this rule of construction. Cases, which hold to the contrary of the views here expressed, are those where the intention of the testator to designate as his heirs at law those, who should be such at the period of distribution, has been clearly manifested by the terms of the will.

In the present case, we think that the estate set apart for the use of the daughter vested in the son and daughter, as heirs at law of their father, at the time of his decease. Although the trustees held the legal title, the equitable title was vested in the son and daughter, subject to be divested by force of the will in the event that Maria Louisa should have children. The reversionary estate, vested in the heirs at law at the testator's death, was liable to open to let in her children in case she should have any, but in the mean time it subsisted in the heirs for the purpose of drawing the possession to them in the event of her death without children. The law always gives preference to vested over contingent remainders. It does not favor the abeyance of estates. Estates in remainder vest at the earliest period possible unless a contrary intention on the part of the testator is clearly manifested. (*Abbott* v. *Bradstreet,* 3 Allen, (Mass.) 587; *Tayloe* v. *Mosher,* 29 Md. 443; *Scofield* v. *Olcott,* 120 Ill. 362; *Gilpin* v. *Williams,* 25 Ohio St. 283.

Where it is a remainder after a life estate, it is regarded as a vested remainder, and the possession only is postponed. (*Abbott* v. *Bradstreet, supra.*) The fact that the gift or devise

must open to let in after born children is not inconsistent with the vesting of the estate in interest at the testator's death, though the vesting in possession is deferred to the period of distribution. (*McCartney* v. *Osburn*, 118 Ill. 403). "When a bequest is made to one or more for life, remainder to the testator's heirs or next of kin, or such persons as would take his estate by the rules of law if he had died intestate, the bequest is to those who are heirs or next of kin at the time of his decease." (2 Williams on Ex'ors. Perkins' 6th Am. Ed. page 1212, note (d) and cases cited). "Where, in the construction of a clause, there is a doubt as to the point of time at which it was intended the estate should vest, the earliest will be taken." (2 Jarm. on Wills, R. & T.'s 5th Am. Ed. page 406 (a), and cases). In *Bullock* v. *Downes*, 9 House of Lords 1, the Lord Chancellor said : "Generally speaking, where there is a bequest to one for life, and after his decease to the testator's next of kin, the next of kin who are to take are the persons who answer that description at the death of the testator, and not those who answer that description at the death of the first taker. Gifts to a class following a bequest of the same property for life, vest immediately upon the death of the testator. Nor does it make any difference that the person to whom such previous life interest was given is also a member of the class to take on his death."

There is a review of the English cases upon this subject in Jarman on Wills, (Vol. 2, R. & T.'s 5th Am. Ed. pages 670 to 683), and it is there stated that the law, as laid down in *Holloway* v. *Holloway*, 5 Ves. 399, "has long been clearly settled." That was a case "where a testator bequeathed £5000 in trust for his daughter for life, and after her decease for her children living at her decease, in such shares as she should appoint; and in case she should leave no child, then as to £1000, in trust for the executors, administrators and assigns of the daughter; and as to £4000, the remainder, in trust for the person or persons who should be his heir or heirs at law.

The daughter died without leaving children, and she and two other daughters were the testator's heirs at law. The Master of the Rolls held that the *prima facie* construction of the words, and their legal meaning, would be, 'heirs at law at the testator's own death,' and that he could not, upon the ground that the daughter was one of the heirs, conclude that heirs at a subsequent time were intended." There is also an able review of the cases by Mr. Justice Hoar of the Supreme Court of Massachusetts in *Abbott* v. *Bradstreet, supra,* where most of the cases, to which we have been referred by counsel for appellees, are commented upon and shown to be exceptional, and to be founded on special circumstances indicating the intention of the testator to make a gift or devise to those who were his heirs at the time of distribution. It is there said that *Holloway* v. *Holloway* is a leading case which has been repeatedly followed and cited with approbation, and a succession of decisions is pointed out in which its doctrine has been approved.

We have set forth herein substantially all the material portions of Nelson Stillman's will, and upon the application thereto of the principles already announced, we discover no intention on his part to designate those, who should be his heirs at law at the date of his daughter's death, as the persons who were to take the interest set apart for her use during her life. In the absence of such intention the established rules of construction, which point to those who were the heirs at law at the date of his decease as the parties entitled to take, must prevail. In *Cable* v. *Cable,* 16 Beav. 507, it was said: "There is always a difficulty in fixing the death of the tenant for life as the period at which the next of kin of the testator are to be determined, for in so construing it you must introduce the words, 'if the testator had died then,'—that is, the sentence must run thus: 'To my next of kin as if I had died at the same time as the tenant for life.'" In recapitulating his intentions and purposes at the end of the will the testator says, in the third paragraph, that he intends "to provide that one

half of the residue or remainder of my estate be set off for an income to my daughter, Mary Louisa, during her life, and the principal to revert to her children, should she have any." It will be observed, that here he omits the following words, which he had previously used: "but in case she died having no issue, in such case to go to and descend in reversion to my heirs at law." In the recapitulation, he provides for no disposition whatever of the one half of the residue in the event of his daughter's death without issue. If the third paragraph of the recapitulation had been the only provision in the will in regard to this share, the law would give it at the death of the daughter without children, to those who were the testator's heirs at law at his decease. (*Bates* v. *Gillett*, 132 Ill. 287.) All parts of the will must be construed together. The second provision, which leaves the remainder undisposed of, and the first provision, which directs it to go to the testator's heirs at law, evidently mean the same thing. Under the second provision the estate would descend, as intestate estate, to the testator's heirs at law. (*Bates* v. *Gillett, supra.*) It follows that the testator intended to designate, by the use of the words "heirs at law" in the first provision, those who would be his heirs in case of intestacy. The estate in case of intestacy would have gone to his son and daughter. (*Rawson* v. *Rawson*, 52 Ill. 62.)

The provision in the fourth clause of the will is that the remainder shall "*go to and descend*" in reversion to the testator's heirs at law. In *Abbott* v. *Bradstreet, supra,* the words were: "at whose decease the said fund is to go and descend to my heirs at law;" and it was there said: "The words 'go and descend' are significant as indicating the wish of the testator that the remainder should be distributed as if it were intestate estate."

It would not be an unreasonable construction of the present will to hold, that the devise of the reversionary interest to the heirs at law was void, because it gives precisely the same estate that the heirs would take by descent if the particular

devise to them had been omitted from the will. The title by descent is regarded as a worthier and better title than the title by devise or purchase. (4 Kent's Com. pages *506 and *507; *Ellis* v. *Page*, 7 Cush. 161). But such construction is unnecessary here, as the estate vested in interest at the testator's death, although the vesting in possession or enjoyment was postponed until the death without issue of the tenant for life. The remainder in this case is not a contingent one so as to postpone the vesting in interest, as well as in possession, until the period of distribution. A remainder is contingent if the persons, who are to take, are not *in esse,* or are not definitely ascertained. (*Bates* v. *Gillett, supra.*) Here the heirs at law were *in esse* and definitely ascertained at the testator's death, although the remainder, vested in them at that time, was liable to open and let in the children of the daughter, if there should be any. We cannot see that there is any element of futurity or survivorship annexed to the gift itself. (*McCartney* v. *Osburn, supra; Cheney* v. *Teese,* 108 Ill. 473.) That which is postponed is the enjoyment of the estate, and not the vesting of the title to it. The testator does not direct the remainder to go to those who *shall be* his heirs at the termination of the life estate, or to those heirs who shall be surviving at that time. He no where in his will evinces an intention to have the reversionary estate descend to his brothers and sisters, or their descendants. Such an intention is negatived by the fact that he contemplated the possibility of having other children at his death than the two named in the will; by the fact that, under the provisions of the codicils, the fund, whose income was to be paid to his sisters, was to go, after their death, to his son "and to his heirs;" and by the further fact that all the specific provisions of the will are in the interest of his son and daughter, and such other children as he might have at his death.

The language of the fourth clause implies a present gift to his heirs at law, and amounts to a devise of the reversion

directly to such heirs *subject to the life estate*, and charged with a contingent interest in the daughter's children, if she should have any.

Another significant circumstance is the fact, that the principal fund, whose income is set apart for the support of the testator's widow during her life, is to go, after her death, "in reversion to my heirs at law." It cannot be supposed, that the testator intended the expression, "heirs-at-law," to have one meaning when applied to those who should take at the termination of the daughter's life estate, and another meaning when applied to those who should take at the termination of the widow's life estate. If the heirs at law designated by the will are those, who shall be such at the respective periods of distribution, then the heirs at law at the widow's death might not be the same as the heirs at law at the daughter's death. The more natural supposition is, that the testator intended to leave the share set apart to the widow for life to the same persons, who would take the portion set apart for the daughter's use during her life. The only way to effectuate such intention is to give to the words, "heirs at law," their legal import and meaning as indicating those who are heirs at law at the testator's death. Moreover, to hold that his intention was to point to his brothers and sisters and their descendants as the persons, who would be his heirs at law at his widow's death, would be to hold, that he anticipated the death of his children as likely to occur before the death of their mother. There is nothing to indicate that he expected his widow to outlive his children, although such has turned out to be the case.

In view of the construction thus given to the will, it follows that the title to the property in controversy vested in Charles P. Stillman and Mary Louisa Stillman at the testator's death. At the death of Charles his one half interest therein descended as follows: all his interest in the New York lot which is to be regarded as personalty, and in the money in the hands of the trustees, and one half of his interest in the Chicago

land, without dower in the other half, went to his widow, Louisa or Lucy Stillman, the other half thereof descending, two thirds to his mother, and one third to his sister; upon the death of Mary Louisa her whole interest in said property, including her original one half thereof and the one third inherited from her brother, descended to her mother, the appellant herein.

There is nothing in the record to show what the will of Mary Louisa Stillman is. It does not seem to have had reference to anything more than certain accrued rents which are given to her executor by the decree below. Counsel for both sides have treated her estate as intestate, so far as the property involved in this litigation is concerned. As we understand it, her executor is not complaining of the decree below. We do not deem it necessary to discuss the question whether the lot in New York City, considered as personalty, should be divided or distributed in accordance with the laws of New York, or in accordance with those of Illinois. We have treated it as subject to distribution according to the Statutes of Illinois. The appellees cannot complain of this mode of distribution, because it cannot concern them how the distribution is made in view of the construction we have given to the will. Nor can the appellant complain, as her counsel take the position before this Court, that the Statutes of Illinois, and not those of New York, should govern in the matter of such distribution.

The decree of the Superior Court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.     *Decree reversed.*

Subsequently, March 4, 1892, the foregoing was supplemented as follows:

MAGRUDER, C. J.: Upon application for a rehearing our attention has been called to the case of *Strawn* v. *Strawn*, 50 Ill. 33, which holds that, where the owner of the reversion dies before the termination of the life estate, his widow is not

29—139 ILL.

entitled to dower.   Upon the authority of this case, it follows. that the widow of Charles P. Stillman took no dower in the half of his reversionary estate which did not go to her as his. heir.   The opinion, as amended, so holds.