### WADSWORTH v. MURRAY et al.

(Supreme Court, Appellate Division, Fourth Department. May 7, 1898.)

WILLS—CONSTRUCTION—ESTATE IN REMAINDER.

    A testator devised certain property to his grandson for life, and provided that, in case the grandson should die leaving no issue, then, in that case, the property was to descend to and vest in testator's heirs at law in the same manner that it would have descended to and vested in them if he had died.

intestate, and the grandson had died without issue before testator's death. *Held*, that the testator intended the heirs at law living at the time of his death to take the interest of the grandson dying wihout surviving issue, and that the heirs were not to be limited to those who might be living at the grandson's death.

Appeal from Livingston county court.

Action by James W. Wadsworth, individually and as trustee under the last will and testament of James Wadsworth, deceased, against Charles James Murray and others, to construe the will of James Wadsworth. Will construed, and plaintiff and certain defendants appeal. Affirmed.

This action was instituted to obtain a construction of the will of James Wadsworth, who died in 1844, and for the final settlement of the accounts of certain trustees appointed by the said will. James Wadsworth was a resident of Livingston county, and the owner of lands in the counties of Allegany, Genesee, Livingston, Monroe, Ontario, and Onondaga. In November, 1843, he made his last will and testament, which was admitted to probate September 9, 1844. He left surviving him two sons, James S. Wadsworth, better known as Gen. Wadsworth (who was killed in 1864 at the Battle of the Wilderness in the war of the Rebellion), and William W. Wadsworth, and a daughter, Elizabeth, and a grandson, Martin Brimmer, Jr., the son of a deceased daughter, Harriet, his only heirs at law. Elizabeth, in December, 1850, intermarried with Charles Augustus Murray, a British subject, and on the 29th of November, 1851, she gave birth to the appellant Charles James Murray, the only issue of such marriage, and on the 8th day of December, 1851, she died intestate. Charles James Murray was born a British subject, and has continued to be such and an alien up to the present time. Martin Brimmer, Jr., was an infant at the time of the death of James Wadsworth. Brimmer died in 1896, never having had at any time any lawful issue, leaving a last will and testament, in which he appointed the defendant William S. Dexter as his sole executor, and in which he devised certain real estate lying in the town of Beverly, in the state of Massachusetts, to his wife (who survived him), her heirs and assigns, and devised all the residue of his real estate to trustees, who were to pay the net income thereof to his wife during her life, and making further disposition of the property upon the death of the wife. The will of James Wadsworth contained what was called in the case "The Brimmer Trust," whereby trustees were appointed for the said Martin Brimmer, Jr., of certain lands and premises, and the proceeds thereof (the nature of which will more particularly appear hereafter), and which is the subject of this litigation. The value of the property embraced in this trust at the commencement of this action involved securities amounting to $350,000, together with land contracts and certain real estate of great value. The disability of Charles James Murray, as an alien, to take property by devise, was removed by statutes of this state after the death of James Wadsworth, and before the death of Martin Brimmer, Jr. James S. Wadsworth left a last will and testament, in which he disposed of his property, and the appeals herein of all the defendants except Charles James Murray involve principally questions arising under certain provisions of that will. Further facts appear in the opinion of the court.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Joseph H. Choate, for appellant Charles James Murray.
Edward P. Coyne, for appellants James W. Wadsworth and others.
J. B. Adams, for appellants Charles F. and Mary W. Wadsworth.
John C. Milburn, for respondent William A. Wadsworth
James Breck Perkins, for respondent Herbert Wadsworth.
George W. Wickersham, for executor and trustees.
John R. Strang, for heirs of Craig W. Wadsworth.

WARD, J.   The will of James Wadsworth devised to his two sons, James S. and William W., all the land and real estate of which he should die seised in the towns of Geneseo and Avon, in the county of Livingston, except what should thereafter be specifically devised, one-half to be held by each devisee during his natural life, and, if he should die leaving lawful issue, such issue to take an estate in fee, but, in case of dying without issue, the surviving brother was to take the fee therein; with power of sale during their lives, as the joint act of the two sons.   He then devised to each of his sons one-fourth of all other lands held by him, in fee, not specifically devised therein.   He then devised unto Martin Brimmer and to his (the testator's) two sons another fourth of all said real estate outside of the towns of Geneseo and Avon, aforesaid, as trustees for his daughter, Elizabeth, to have, hold, and dispose of for the benefit of Elizabeth, in the same manner as hereinafter stated as to the devise for the benefit of Martin Brimmer, Jr., and, if Elizabeth left issue, her surviving, such issue should take an estate in fee in the real estate thereby devised to trustees; but, in case Elizabeth should die without issue, then the same provision was made as to the descent and the vesting of the estate in the heirs at law as was made in the case of Martin Brimmer.   And the will further provided as follows:

"I give and devise unto the said Martin Brimmer, James S. Wadsworth, and William W. Wadsworth one other fourth part of all the real estate I may have at the time of my death not hereinbefore or hereinafter specifically devised, wheresoever situate, as trustees for my grandson, Martin Brimmer, Jr., to have and to hold the same, as such trustees as aforesaid, to them and to their successors in office, so long as the said Martin Brimmer, Jr., shall live, in trust to receive the rents, profits and income thereof until the said Martin Brimmer, Jr., shall attain the age of twenty-one years (if he shall so long live), and to invest such rents, profits, and income in the same manner that they are hereinbefore authorized to invest the proceeds of real estate devised to them in trust for my daughter, Elizabeth, and to hold the same upon like trusts, but for the benefit, nevertheless, and as trustees, of the said Martin Brimmer, Jr,; and after the said Martin Brimmer, Jr., shall arrive at the age of twenty-one years, they shall annually pay to the said Martin Brimmer, Jr., the rents, profits, and income of the lands herein conveyed to them in trust for him, and the rent, profits, and income of all accumulations thereof, before he shall arrive at the age of twenty-one years.   And in case the said Martin Brimmer, Jr., shall die leaving lawful issue, him surviving, such issue shall take an estate in fee in the real estate hereby devised in trust for him, and the entire and absolute estate and interest in such accumulations, as are hereinbefore provided for.   And in case the said Martin Brimmer, Jr., shall die leaving no lawful issue, him surviving, then, and in that case, the estate in said lands, and the entire and absolute estate and interest in such accumulations, shall descend to and vest in my heirs at law in the same manner that it would have descended to and vested in them if this will had not been made and the said Martin Brimmer, Jr., had died without issue before my decease."

The will further authorized the trustee to sell all or any part of this real estate, and to invest the proceeds for the benefit of the cestui que trust, and it also bequeathed to the trustee one-fourth of all the personal property that the testator should have at the time of his death not otherwise bequeathed, to receive the income and profits, and pay the same annually to Martin Brimmer for the benefit of his son Martin Brimmer, Jr., until he should attain the

age of 21 years, if he should live so long; and when Martin Brimmer, Jr., should arrive at the age of 21 years, the estate and interest in the personal property thus bequeathed in trust should vest absolutely in the said Martin Brimmer, Jr., and the trust thereby created, so far as the same related to such personal property, should end.

The trial court, in construing the provisions of the will above quoted, held "that a remainder estate was therein and thereby created in favor of the heirs of the testator living at the time of his death in equal shares, excluding the said Martin Brimmer, Jr., to wit, William W. Wadsworth, James S. Wadsworth, and Elizabeth Wadsworth (afterwards Elizabeth Murray), which remainder estate, so therein and thereby devised to them, vested in possession upon the death of Martin Brimmer, Jr., leaving no lawful issue him surviving"; and also the same direction should be given to the proceeds of land sold by virtue of the power of sale contained in the will, to be disposed of in the same manner that the lands would have descended and been disposed of if they had not been sold. And further held "that the remainder estate in the said lands of the said Elizabeth Murray descended upon her death to her brothers, James S. Wadsworth and William W. Wadsworth, and her nephew Martin Brimmer, Jr., in equal shares, as her heirs at law, and not to the defendant Charles James Murray, by reason of his alienage."

With this conclusion of the trial court all of the parties to this action are content except the appellant Murray; and the position of his learned counsel is that the remainder in question is contingent; that, whether it be contingent or not, in any event the "heirs at law" —the class to take—are determinable only on Martin Brimmer, Jr.'s, death, and include only those of the class in existence at that time, so that their surviving that event becomes absolutely essential, in order that they may share in the distribution of the trust property; that Murray, on Brimmer's death, became one of that class (heirs at law of the testator), and so took by devise under the will. It would thus be unnecessary for him to trace his title by descent through his mother, and, under the statutes of this state, he, though an alien, would be entitled to take under such a devise. And the counsel seeks to fortify this position by urging the following considerations: That the will should not be so construed as to disinherit Murray, a lineal descendant of the testator; that upon the face of the will it is clear that the testator intended to exclude Brimmer personally, and all claiming through him, who should not be of the blood of the testator, from any participation in the actual division of the real estate held in trust for Brimmer's benefit, upon the falling in of the remainder; that while conceding the general rule that, upon a gift or devise to heirs or to heirs at law, those heirs are to be ascertained as of the time of the death of the testator, this case is taken out of the general rule by the language of the devise itself, which provides that, "in case the said Martin Brimmer, Jr., should die leaving no lawful issue, him surviving, then, in that case, the estate in said lands, and the entire and absolute estate and interest in such accumulations, shall descend to and vest in my heirs"; that, as the testator has excluded one of his heirs at law, Brimmer, the remaining

heirs take larger and different interests than they would have taken in case of intestacy, and thus a class is created which makes an exception to the general rule; that the word "heirs" in this devise is not used in an ordinary or narrow sense, but applies to all persons who would take as heirs at law of the testator upon the death of Brimmer.

The position of the other parties to this controversy is indicated by the conclusions of the trial court above stated. But, to be more specific, they claim that the will creates an equitable estate during the life of Martin Brimmer, Jr., with the remainder over at his death to his issue then surviving, if any, and, in default of such issue, then to the testator's heirs at law in existence at the time of the testator's death, "in the same manner that it would have descended to and vested in them if this will had not been made and the said Martin Brimmer, Jr., had died without issue before my decease" (quoting from the will). That there are two views that may be taken of the future estate thus created in favor of the heirs of the testator: One is that the estate of the heirs was a vested remainder, subject to be defeated by the death of Martin Brimmer, Jr., leaving issue him surviving; and the other is that it was a remainder contingent on the death of Martin Brimmer, Jr., without issue. That it is not important to determine which of these two estates it was, because both were transmissible estates. That a vested remainder is, of course, a transmissible estate. A contingent remainder is also a transmissible estate when the takers are ascertained and the contingency relates only to the collateral event upon the happening of which the vesting in estate depends.

The precise character of this remainder is not fully discussed or defined by the learned counsel who have argued this case, and perhaps it is not necessary for the court to attempt to do so. It may, however, be conceded that whatever the estate in remainder may be,—whether it has all the attributes of a vested remainder, or such elements of uncertainty as may make it contingent,—the property embraced in the remainder was transmissible, whether it goes under the will to the heirs of the testator upon his death, or to the heirs that may be in existence at the remote period of the death of Martin Brimmer, Jr., more than 50 years after the probate of the will of James Wadsworth. Co. Litt. 143a, says: "The remainder is a residue of an estate in lands dependent upon a particular estate, and created together with the same." Section 13, tit. 2, pt. 2, c. 1, p. 722, Rev. St., provides that "future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom or the event upon which they are limited to take effect remains uncertain."

From this definition it would seem that, as the time of the termination of the life estate of Brimmer was uncertain, if the persons in whom the remainder vested could not be ascertained upon the death of the testator, but could only be such as would be in existence at the death of Brimmer, Jr., the remainder would be contingent; other-

wise, vested.   So, in determining whether the remainder is vested or contingent, if that should be necessary in the disposition of this case, we are remitted to the pivotal question whether the remainder descended to the heirs of the testator who could take at the time of his death or otherwise.

Let us recall the exact provisions of the will bearing upon this subject:

"And in case the said Martin Brimmer, Jr., shall die leaving lawful issue, him surviving, such issue shall take an estate in fee in the real estate hereby devised in trust for him, and the entire and absolute estate and interest in such accumulations, as herein provided for.   And in case the said Martin Brimmer, Jr., shall die leaving no lawful issue, him surviving, then in that case the estate in said lands, and the entire and absolute estate and interest in such accumulations, shall descend to and vest in my heirs at law in the same manner that it would have descended to and vested in them if this will had not been made and the said Martin Brimmer, Jr., had died without issue before my decease."

Taking these words altogether, it seems difficult to misunderstand them, or build upon them the conflicting theories and interpretations which we find in the briefs of counsel.   The estate is to descend to and vest in the heirs at law of the testator in the same manner that it would have done had the will not been made. and Brimmer, Jr., had died without issue before the decease of the testator.   If no will had been made, the property would have gone, in the course of intestacy, to the heirs of James Wadsworth existing at the time of his death.   We do not see that the concluding words, "and the said Martin Brimmer, Jr., had died without issue before my decease," qualify the result we have just indicated.   They rather supplement that statement and strengthen it.   Nor do the words, "then and in that case," even using the word "then" as an adverb of time, taken in connection with the whole paragraph, tend to postpone the period of ascertaining the parties entitled to the remainder.   This view is sustained in Whall v. Converse, 146 Mass. 345, 15 N. E. 660; Bullock v. Downes, 9 H. L. Cas. 1; Dove v. Torr, 128 Mass. 38; Doe v. Lawson, 3 East, 278; and the strong recent cases of Corse v. Chapman, 153 N. Y. 466, 47 N. E. 812, and Hersee v. Simpson, 154 N. Y. 496, 48 N. E. 890.   In Re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401, the sixth provision of the will was as follows:

"All the rest, residue, and remainder of my estate, real and personal, I give, devise, and bequeath to my executors hereinafter named, in trust to apply and pay over the income of one equal undivided one-half part thereof to my adopted daughter and niece Elizabeth Seaman during her natural life, and upon her decease I give, devise, and bequeath said equal undivided one-half part of my estate so held in trust for my said adopted daughter and niece to the children of my nephew George A. Seaman living at the time of her death, share and share alike."

Judge Finch, in construing this provision, at page 74, 147 N. Y., and page 401, 41 N. E., says:

"I think the four children of George took vested interests in the residuary property, both real and personal, at the death of the testator, subject, on the one hand, to open and let in after-born children, and on the other to be defeated by death without issue during the running of the life estate,"—citing Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811.

Again the learned judge says:

"It is obvious that a right of succession to the estates in remainder passed at once, on the death of the testator, to the four children, and was a vested interest, though subject to be defeated or modified by subsequent contingencies."

While this was a transfer-tax case, it involved the construction of a will where the language would seem to indicate that the title did not vest in the children of George until the termination of the life estate, the language being stronger in that direction than in the case at bar. But courts incline to a construction that will vest the remainder at once upon the death of the testator. This is essential for the permanency of estates and to avoid uncertainty as to titles. Byrnes v. Stilwell, 103 N. Y. 460, 9 N. E. 241; Whall v. Converse, supra; Du Bois v. Ray, 35 N. Y. 162. And the tendency of the courts, both in England and in this country, has been steadily in the direction of maintaining this view, and of holding that the remainder vests in the heirs in existence at the time of the death of the testator. Doe v. Lawson, supra; Mortimore v. Mortimore, L. R. 4 H. L. 448; Holloway v. Holloway, 5 Ves. 399; Harrington v. Harte, 1 Cox, Ch. 131; Ware v. Rowland, 2 Phil. Ch. 635; Seifferth v. Badham, 9 Beav. 370; Baker v. Gibson, 12 Beav. 101; Harrison v. Harrison, 28 Beav. 21; Urquhart v. Urquhart, 13 Sim. 613; Minot v. Tappan, 122 Mass. 535; Abbott v. Bradstreet, 3 Allen, 587; Buzby's Appeal, 61 Pa. St. 111; Kellett v. Shepard, 139 Ill. 433, 28 N. E. 751, and 34 N. E. 254.

The following cases in the courts of our own state may be profitably consulted upon this subject: In re Seaman, supra; Campbell v. Stokes, supra; Du Bois v. Ray, supra; Warner v. Durant, 76 N. Y. 133; Cushman v. Horton, 59 N. Y. 149; Woodward v. James, 115 N. Y. 346, 22 N. E. 150; Sage v. Wheeler, 3 App. Div. 38, 37 N. Y. Supp. 1107 (see opinion by Hardin, P. J.). And see, also, Hersee v. Simpson, 20 App. Div. 100, 46 N. Y. Supp. 755, and opinion by Hardin, P. J.

In Kellett v. Shepard, supra, the court says:

"Ordinarily the words 'heirs' or 'heirs at law' are used to designate those persons who answer this description at the death of the testator; hence where the word occurs in a will it will be held to apply to those who are heirs of the testator at his death, unless the intention of the testator to refer to those who shall be his heirs at a period subsequent to his death is plainly manifested in the will. This construction is not changed by the fact that a life estate may precede the bequest to the heirs at law, nor by the circumstance that the bequest to the heirs is contingent on an event that may not happen."

This we regard as a correct exposition of the law upon that subject. In Buzby's Appeal, supra, the testator devised real estate to his son for life, with remainder over to his children living at his death and the lawful issue of such as should then be deceased; for the want of such child or children, then to the testator's "right heirs forever." It was held that the heirs of the testator at his death took under the last limitation. The court in that case said:

"But whether the limitation over to the testator's heirs, in the event of the death of the tenant for life without children living, is regarded as an executory devise or a contingent remainder will not affect or vary the rule of construction,

as it respects the heirs entitled to take. The limitation to the heirs must be construed to mean those who were such at the testator's death, unless a different intent clearly appears. Whether, therefore, the remainder be regarded as contingent or vested, the heirs of the testator who were living at his death are entitled to it under the limitation."

In Doe v. Lawson, supra, the testator devised real estate to trustees for the use of his son for life, with remainder to his issue, but in default of such issue, or if he contracted a certain marriage, he then and thereupon devised the said premises to a nephew for life, and after his death devised the premises to trustees, for and among such persons as should be proved to be next of kin to the testator, in such parts as they would have been entitled to take in his personal estate, under the statute of distributions, as if the testator had died intestate. The limitation over having taken effect, it was held that the testator's next of kin at his death took. Lord Ellenborough in that case said:

"The question is whether by the words 'next of kin,' etc., as here used, the testator meant such as should answer that description when the limitation over was to take effect,—that is, in case of John Lawson's marriage with any of the daughters of J. Ismay, or cf his death without issue,—or whether the testator meant such as should be his next of kin at the time of his own death. The limitation over is to such person or persons as shall appear and can be proved to be his next of kin, in such parts and proportions as they would, by virtue of the statute of distribution, have been entitled to his personal estate if he had died intestate. Now, when would they have been entitled to his personal estate if he had died intestate? At the time of his death. Then the distribution must be made at such time as will best meet the words of the will, which is at his death, when the title by the intestacy accrues, and must therefore be made among those persons who would have then been entitled to share if he had died intestate, or to their representatives."

The strong application of the rule in that case to the one at bar is apparent.

The cases that form exceptions to the rule that a devise to a class of persons takes effect as to those who constitute the class at the death of the testator may be resolved into three kinds: First. Where there is no present gift, but a future interest is devised, not directly to a given person, but indirectly, through the exercise of a power conferred upon the trustees, thus leaving the devise contingent. Second. Where the remainder is given to the heirs of others than the testator. In that case the beneficiaries do not take until the decease of the person of whom they become heirs. Third. Where the beneficiaries of the remainder are both the heirs of the testator and the heirs of third persons, and all the beneficiaries are resolved by the will into one class, and in that event the remainder does not vest until all the class can be ascertained.

The cases of Campbell v. Rawdon, 18 N. Y. 412, and the cases hereinafter cited as those upon which the counsel for the appellant Murray relies, illustrate these exceptions.

The learned counsel for the appellant Murray cites Delaney v. McCormack, 88 N. Y. 174; Bisson v. Railroad Co., 143 N. Y. 125, 38 N. E. 104; In re Baer, 147 N. Y. 348, 41 N. E. 702,—as sustaining his contention. In each of these cases the circumstances and conditions were materially different from the one at bar. In Delaney v.

McCormack there was a direction to sell real estate, and distribute the proceeds among the testator's next of kin as personal estate, and the court says, at page 183, that there was no gift to the next of kin, and no language importing such gift, except in the direction to convert the real estate into money, and then make distribution; and that in such cases the rule is settled that time is annexed to the substance of the gift, and the vesting is postponed. In the case at bar there was a direct devise to the heirs of the testator, with the right of possession upon the termination of the life estate. In the Bisson Case a trust was created in certain real estate for the benefit of the testator's wife during widowhood, and upon her death or remarriage he gave the estate to his wife, and to his wife's heirs and assigns, forever, share and share alike. The court held that the effect of this provision was to resolve the testator's heirs and those of his wife into one class, and that they took per capita, and not per stirpes, and, inasmuch as the heirs of the wife could not be ascertained until her death, therefore the remainder did not vest until after her death. In the case at bar no such condition existed. In the Baer Case the will devised certain property in trust for the use of the testatrix's daughter, and at her death to her issue, if any. In case the daughter died without issue, the trustees were directed to apply the rents and profits of the property to the support of another daughter during her life, and at her death to convey the remainder to the children and lawful heirs of her brother Harmon Hendricks, deceased, to share and share alike per stirpes. The direction, therefore, was to convey to a class composed of the children and lawful heirs of the brother, as the heirs of the brother could not be ascertained until his death, and title therefore could not vest in the beneficiaries at the death of the testatrix, but was necessarily postponed until the brother's death.

But the appellant's counsel chiefly relies upon Sears v. Russell, 8 Gray, 86 (a Massachusetts case). There the devise in the first instance was to the testator's daughter for life, and on her death to her children, if any, "or, in default of any child or issue then living, to convey the same to my heirs at law"; with an express proviso that in no event should the testator's sons-in-law and daughters-in-law be permitted to take,—the testator further declaring, in case of the decease of one or more of his grandchildren without issue, he gave and devised the same to his heirs at law. The court held in that case, in effect, that there must be such a construction put upon the will as would not defeat the declared intention of the testator to exclude the wives of his sons and the husbands of his daughters from taking under the will, and the court continues:

"The rules of construction that the word 'heirs' in a will is usually construed to mean those who are such at the time of the testator's decease, and that estates created by devise are to be held to be vested rather than contingent, must give way to the controlling rule of interpretation that the intent of the testator is to govern if it does not conflict with the rules of law, * * * and if it be found to conflict it does not change the rule of construction. The will must fail so far as it violates the rules of law, not because the intent of the testator does not control its construction, but because the law will not permit his intent to be accomplished."

There is no such feature in the case at bar.    There is no express declaration indicating the intent to exclude those who shall not be the blood of the testator.    But the counsel for Murray seeks to infer such an intent, though not expressly declared in the will of James Wadsworth.    That will shows much consideration for the Brimmer line.    The father of Martin, Jr., is made one of the executors of the will, as well as a trustee of the property of Elizabeth, the only surviving daughter of the testator, and also a trustee of the grandson of the testator, Martin Brimmer, Jr.    The real estate of the Brimmer trust is devised to the issue of Martin, Jr., after the end of the life estate, should such issue appear, and through the line of such issue the estate might have been diverted to the strangers of the blood of the testator.    The personal property of the trust is bequeathed to Martin, Jr., absolutely, if he arrives at the age of 21 years.    The single circumstance that Martin, Jr., is excluded as a direct heir of the testator to the Brimmer trust, is not, in our judgment, sufficient, in view of all the provisions of the will, to lead to the conclusion that the testator intended to exclude him from any property that might come to him as an heir of Elizabeth or of either of the sons of the testator.    There is no doubt but what the testator intended that the share of Elizabeth should descend to her issue if she had any, but it was not and could not have been within the contemplation of the testator that such issue would be an alien, and disqualified by law from inheriting from his mother.    The son, being an alien, could not inherit under the laws of this state, and therefore, upon the death of the mother, her property passed to her heirs at law, the same as though she was childless.    Orser v. Hoag, 3 Hill, 79.

We must construe this will in the light of the circumstances and conditions of the time when it took effect.    We cannot view it in the backward light that half a century has thrown upon it, and construe it under the conditions that followed.    While we may regret that the son of Elizabeth has been disinherited by the laws of our state in relation to alienage, and the purpose of the testator as to any heir that his daughter might have thus defeated, and while we sympathize with the feeling that the courts have manifested of construing wills so that lineal descendants will not be disinherited where such a construction can reasonably be made, we are not permitted to make wills by construction to suit our views of equity, but we must take those instruments as we find them, and construe them by the light that surrounded their execution, and not as a result of the conditions that thereafter occurred, and which could not have been foreseen or provided for.    Nor are we permitted to violate the plain injunctions of the law upon this subject that the courts with singular uniformity have laid down for our guidance.    Nor can we annex "futurity to a gift," in violation of the plain commands of the testator.    We have carefully examined the grounds upon which the other appeals were taken, and we are of opinion that the disposition made in that regard by the trial judge is correct, and that the modification of the judgment sought by the other appellants should be refused.

As the questions in this case are interesting and highly important, and to some extent novel, and as the action seemed necessary for the proper construction of this will, we think it an appropriate case in which the costs of all the parties that are represented by attorneys in the case should be paid out of the fund in controversy. All concur, except FOLLETT, J., not voting.

HARDIN, P. J. Besides the authorities cited in the opinion of WARD, J., I have looked at the following cases: Moore v. Lyons, 25 Wend. 119; Mitchell v. Knapp, 54 Hun, 500, 8 N. Y. Supp. 40; Nelson v. Russell, 135 N. Y. 140, 31 N. E. 1008; Corse v. Chapman, 153 N. Y. 466, 47 N. E. 812; and I concur in the conclusion stated in his opinion.