Arthur Du Bois and others, Respondents, *v.* Robert Ray and others, Appellants.

It is to be presumed that a testator intended to make a legal disposition of his estate, rather than a void or an illegal one.

In the sentence following: " Or, in case such child or children should die without lawful issue, *and thus I should have no lineal descendants,* I give, devise and bequeath my whole estate, real and personal, to the children whom my brother, Robert Ray, and my sister, Mary King, may leave," &c. — to sustain the validity of the disposition, and carry out the manifest intention of the testator, the words, "may leave," may be read, "may have."

It is the duty of the court to give to the language used by a testator such a construction as will make the instrument or limitation legal or valid, if it can be done in harmony with well-settled rules, with the manifest intent, and adjudicated cases, rather than such construction as will render them illegal and nugatory.

*M. S. Bidwell,* for the appellants.

*D. Lord,* for the respondents.

Davies, Ch. J. This action was commenced for the purpose of obtaining a construction of the last will and testament of Richard Ray, deceased.

The testator was a resident of the city of New York, a lawyer by profession, and possessed of a large real and personal estate.

The will under consideration bears date March 22, 1834, at which time the testator had one child, named Elizabeth Sarah, and his wife, Mary R. Ray, was then and still is living. On the 9th of February, 1835, the testator had another daughter born, named Mary Rebecca, who is now living, and is the wife of the plaintiff, Du Bois. The testator departed this life on the 21st day of March, 1836, leaving his will in full force, and his said wife and two daughters him surviving.

On the 2d day of April, 1840, the said Elizabeth Sarah Ray died under age, unmarried and intestate, leaving her sister, Mary Rebecca, the only child of the testator.

The questions presented for examination and decision arise

upon the sixth clause of the will, which is in these words: "In case I have no child or children living at the time of my death, or no posthumous child; or in case such child or children should die without lawful issue, *and thus I should have no lineal descendants,* I give, devise and bequeath my whole estate, real and personal, to the children whom my brother, Robert Ray, and my sister, Mary King, may leave, or the child or children of any who may die before me (such child or children to inherit only its father's or mother's share), to be divided equally and in equal parts among such children *per capita* and not *per stirpes,* when the eldest of such children shall have attained the age of thirty-four years; each child who, at the time of such division, may be under age, to receive his or her portion on reaching the age of twenty-one years."

The testator had, by previous provisions of his will, vested a life estate in his own children, and the remainder in their children. At the time of the testator's death, as already observed, he left two children, and had no posthumous child, and one of said children has since deceased, leaving no child or children.

The survivor, although married for several years, has had no child, and it is assumed that she will have none. In the event of her dying childless, and thus the testator should have no lineal descendants, the question arises, whether the devise over to the children of Robert Ray and Mary King is valid and lawful?

The testator is to be deemed as speaking at the time of his death, and it is quite clear, from the whole will, that his expectations and intentions were, that his children should have the use and advantages of his estate during their lives, and if they, or either of them, left issue, then the estate was to vest in such issue absolutely. But, in the event that they should die without lawful issue, and thus he should have no lineal descendents, then it was his intention and desire that his estate should go to the children of his brother and sister *per capita,* and not *per stirpes;* that is, that each of said children should have an equal part or portion of his said estate,

and if either of said children should die before him, then the child or children of the one so dying was to inherit only its parents' share, and was to take and have such share.

At the testator's death, therefore, his two surviving daughters had a life estate in his property thus devised, and each of the children of his brother and sister living at his death, and the child or children of any such who may have theretofore died, had a vested remainder therein, subject to be wholly divested by either of his said daughters leaving lawful issue at the time of her death.

The alienation of the estate was undeniably suspended during the lives of the two daughters, and if it was thus only suspended upon two lives in being at the time of its creation, it could so lawfully be done.

But it is contended, on the part of the plaintiffs, that it was further suspended until the termination of the lives of the brother and sister of the testator, and if so suspended, that such suspension is unlawful and void.

If the testator has suspended the alienation of his estate for more than two lives, it follows, of course, that such provision of his will is unlawful and cannot be sustained.

This argument is based upon the language used by the testator, and if we adhere to its literal and exact terms, it must be conceded that the alienation of the estate is not only suspended upon the lives of the two daughters of the testator, but also upon the lives of his brother and sister. For, if the takers are unascertained until after the death of the brother and sister; in other words, are dependent upon the contingency of those *they may leave* at the time of their death respectively, then the estate must necessarily be suspended until the happening of those contingencies. The devise and bequest are to the children whom the brother and sister *may leave*, and to the child or children of such child as may have died during the lifetime of the testator, living at the time of his death.

If these words, "may leave," can, consistently with rules of law and canons of construction, be read, "may have," then all embarrassment is removed, and full effect can be given to what was the manifest and evident intention of the

testator. The language used by him is clear and appropriate to indicate what disposition he intended to make of his estate. This is manifest also from the whole frame-work of the will. In the first place, he intended, beyond all question, that his two daughters should only have a life estate in his property, and that in the event they or either of them left issue, such issue was to take the same absolutely. Such issue failing, and thereby the testator having " *no lineal descendants,*" then he desired the estate to go to the children of his brother and sister, or in the event that either of those children should have died before him, leaving a child or children, then such child or children was to have and take its parents' share.

In this connection, it is very apparent that the testator used the words " may leave" in the sense of " may have," for he directs that the child or children of either his brother or sister, who may have died during his lifetime, and leaving issue, should take its parents' share. What share, unless it be that portion of the estate its parent would have taken if living at the period of the testator's death? It would thus appear that the testator contemplated this period as that at which his estate should vest, in his nephews and nieces and their issue, subject to be wholly divested by his daughters, or either of them leaving issue. Such a disposition of the estate of the testator would seem to be natural, obvious and just, and if the manifest intent of the testator can be sustained, without violating any established principle of law, it is the duty of the court to give it effect and to uphold the will. It is to be presumed that the testator intended to make a legal disposition of his estate, and not a void or illegal one. Intestacy is what he never intended or contemplated. It is the duty of the court to give to the language used such construction as will make the instrument or limitation legal and valid, if it can be done in harmony with well-settled rules, with the manifest intent, and adjudicated cases, rather than such construction as will render them illegal and nugatory.

Lord Coke says that it is a general rule that, " whensoever

the words of a deed, or of the parties without a deed, may have a double intendment, and the one standeth with law and right, and the other is wrongful and against law, the intendment that standeth with law shall be taken." (Co. Litt. 42, *a. b.*) In the *Case of the Earl of Clanricarde*, Lord Hobart said, " and here first I do exceedingly commend the judges, that are curious and almost subtile, *astuti* (which is the word used in the Proverbs of Solomon in a good sense, when it is to a good end), to invent reasons and means to make acts according to the just intent of the parties, and to avoid wrong and injury which by rigid rules might be wrought out of the act." (Hobart, 277, *b.*)

In *Formereau* v. *Formereau* (3 Atk., 314) Lord Hardwicke said : " I am of Lord Harcourt's opinion upon the reason of the thing. People frequently differ in expression, though they mean the same thing ; and it would be construing wills by too great a nicety to lay weight upon such strict forms of words when the meaning is plain ; " and the marginal note to this case is, " there may be a difference of expression in wills, though the same thing is meant, and to lay weight on strict forms of words when the meaning is plain, would be construing wills with too great nicety."

In another case, it has been said, " Hence, when words are capable of a two-fold construction, even in the case of a deed (and much more of a will), it is just and reasonable that such construction should be received as tends to make it good." Per Lord Talbot in *Atkinson* v. *Hutchinson* (3 P. Wms., 260). And this rule is repeated with approbation by Mr. Justice Lawrence in *Thellusson* v. *Woodford* (4 Ves., 312). So, also, by Mr. Justice Sutherland in *Grover* v. *Wakeman* (11 Wend., 193). (See *Mason* v. *Jones*, 2 Barb. S. C., 244.)

Chancellor Walworth, in *Butler* v. *Butler* (3 Barb. Ch., 310), declares the rule to be, that, in the construction of wills, if the language of the testator is such that it may be construed in two different senses, one of which would render the disposition made of his property illegal and void, and the other would render it valid, the court should give that construction to his language which will make the disposition of

his property effectual. Ch. J. WILMOT, in delivering the unanimous opinion of all the judges of England in the House of Lords, says: "As the law has been now settled about a century and universally known, it ought to appear clearly and explicitly that the testator meant an illegal limitation. The proof of such an intention lies upon the party who asserts it. If that intention does not appear, if there is the least doubt about it, the presumption would be that he meant a disposition he was enabled to make by the rules of the law, and not a disposition condemned by the law. If the legal supposition is to prevail that every man knows the law, no man in his senses could intend to do what he knew he could not do, and to see what he did intend, I will examine the will, for the intent and meaning of the will is the question." (*Reilly* v. *Fowler*, WILMOT's opinion, 298.) And, in the same case, he also says: "Therefore, courts make the words follow the intention, enlarge, abridge, transpose, do anything to reach the intention, when they are sure they see and know it." (See also *Townsend* v. *Stearns*, 32 N. Y., 209.)

Applying the doctrine of these cases to the clause of the will now under consideration, it is plainly our duty to give such a construction to the particular language used in it (if the same can consistently be found to have a doubtful or a two-fold meaning) as will render the disposition made by the testator of his property effectual and consistent with his intention, rather than by following a literal reading of it, thwart his intentions, and render nugatory and void the limitation.

As already observed, it is clear that the testator did not intend to vest absolutely his estate in either of his children. In the event of their dying without issue, it was undeniably his will that his property should go to his nephews and nieces, and to the children of such, if any, who may have died before his death. If the construction contended for by the plaintiffs be the correct one, then the estate was suspended not only for the lives of the testator's two daughters, but also upon the lives of his brother and sister, as it is certain that it could not be ascertained who they might *leave*, until both of

them should have died. This the testator must have well known could not have been done, as the alienation of the estate could legally be only suspended for two lives, and an attempt to suspend it for four lives would render the limitation null and void and create an intestacy. We should not, therefore, adopt a construction which will suspend the vesting of the estate in the nephews and nieces living at the time of the testator's death, until the decease of his brother and sister, unless imperatively compelled to do so, by the language used by him, and which we cannot be permitted to use in any other sense.

The law favors the vesting of estates, and the testator clearly indicated that the share or portion of every nephew or niece, who may have died before him, should vest absolutely, on his death, in any child or children of such nephew or niece living at his decease. Such construction is, therefore, to be adopted as will effect the vesting of the whole estate, rather than that which will suspend the ownership to another and indefinite period, especially as the one is legal, and the other would be illegal and void. (*Doe* v. *Provost*, 4 Johns., 65 ; *Moore* v. *Lynes*, 25 Wend., 126; 1 Ves., Sr., 114.)

By the terms of the sixth clause of the will, the estate was to be divided in the event of its going over, on the failure of lineal descendants, when the eldest of the children of his brother and sister should attain the age of thirty-four years. It was to be divided equally and into equal parts among such children, and among the child or children living at the testator's death, of any who should have died before him. These were the persons in whom the remainder was vested upon the death of the testator, and if the words "may leave" be construed in their literal and exact meaning, it is submitted that the result would then be, that the after-born children of the brother and sister of the testator would be let in and participate as remaindermen. In this sense the words "may leave" may be regarded as synonymous with "begotten" or "to be begotten." They indicate and embrace all the children born or to be born of the testator's brother or sister, and in such case, if there had been only one nephew or niece

living at the death of the testator, the estate would vest in that one, and would open to take in after-born children. (*Cook* v. *Cook*, 2 Verm., 545.)

In *Doe* v. *Provost* (*supra*), the devise, by the testator, was to his daughter for life, and immediately after her death unto and among all and every such child and children as his said daughter should lawfully have begotten at the time of her death. The court held, that, upon the decease of the devisor, the daughter took an estate for life, and her four children, then living, took a vested remainder in fee, and in case there had been any after-born child or children of the daughter, the remainder would have opened for their benefit, so that the property, in the language of the will, "might be equally divided between them, share and share alike."

But it may be contended that the language and intent of this will indicated that the testator had, in his mind, a disposition of his estate, which was to be operative at the time of his death, and that the beneficiaries were to be then designated and known, and were so, in fact. An evidence of this is found in the careful provision for a posthumous child. Then follows the direction, that on failure of his lineal descendants, that the estate should go to his collaterals.

All the children of his brother and sister, living at his death, were to take equal parts *per capita* and not *per stirpes*, and such of those children as should have died prior to his death, leaving children; had provision made for their child or children, who were to take the share of his or their parents. What share? Undoubtedly the share his or their parents would have taken if living at the time of the testator's death. There is a clear and unmistakable intention of the testator that the shares of the nephews and nieces were then to be designated and known. They each then had their share — otherwise there is no meaning in the language used, when speaking of those who were to take, for, in the event any nephew or niece had died before him, he says, "such child or children to inherit only its *father's or mother's share*."

This language has no force, except on the assumption

TIFFANY — VOL. VIII.    22

that the testator intended that, at the time of his death, each nephew and niece would take a portion of his estate, which he designated as his or her *share*.

On the assumption that the estate was not to vest until the death of the brother and sister, it is to be observed that no disposition has been made of the income of it after the termination of the life estates of the testator's children, they dying without issue, and until the death of both the brother and sister. If the testator had not contemplated a vesting of his estate at the time of his death, it is quite difficult to conceive any motive for the omission to make such disposition during that period. In a carefully prepared will like the present, by an intelligent and professionally educated man, it cannot be doubted that such a contingency must have presented itself to his mind, if he had intended to have suspended the ownership of his estate upon the lives of his brother and sister.

The omission of any disposition of the income of the estate during the lives of the brother and sister, and after the termination of the life estates, furnishes, with the other circumstances of the case, controlling evidence that the testator never intended that there should be any suspension of the ownership of his estate beyond the lives of his own children. The limitation to the children of his brother and sister, in connection with that to the child or children of any who died before him, taking his or her parents' share, clearly points out the period of the testator's own death as that at which it was to be determined who should take the estate on failure of his lineal descendants. He thus designated persons known to him, and who he had himself selected as the recipients of his bounty. He contemplated that they would be in existence, and failing his own descendants, the natural objects of his affection and solicitude. It cannot be denied that these views conflict with the literal and strict reading of the language used by the testator if we give to the word "leave," as used by him, the signification that it was intended to designate only those children which his brother and sister might leave at their death. Such a reading of the words used seems to me clearly inconsistent with the declared intent

and purposes of the testator, as manifested by the tenor and provisions of the whole will. The testator certainly did not use the word "leave" in this sense. This, it is thought, has been already demonstrated, and that he used it as identical in meaning with the word "have," intending thereby to designate the children of his brother and sister, which they might *have* at his death. Such a construction makes the will harmonious, consistent with itself in all its parts, effectuating the obvious intentions of the testator, and making legal and valid what would otherwise be illegal and void.

It is always assumed, as a rule of construction, that the testator knew the law, and we are also to assume that he desired to make legal and effectual disposition of his property. If, therefore, the language used by him is capable of a reading consistent with the law, it is our plain and imperative duty to give it that reading. The intent to fix the time of his death as the period for the designation of the persons who were ultimately to take under his will, being clear, and the legal necessity that that period should be thus fixed, lead to the inevitable conclusion that the testator fixed in his own mind that period as the one at which it was to be determined who should take. It was those children of his brother and sister *then* left and the child or children of such as had *then* died leaving issue, such child or children taking the share its parent would have taken if living at the time. Such children of his brother and sister as had died before the testator, were not left, and therefore not takers under the will. It was those only left at that time who were to take, and the issue of such as had previously died.

It is obvious that a literal reading of this clause would entirely fail to give effect to the testator's intentions. Such literal reading would give the estate, in the event of the failure of his lineal descendants, to the children of his brother and sister, *or* to the child or children of such as may have died prior to the testator's death. Now he certainly never intended to have made an alternative disposition of his estate, by which a grandnephew or niece could take the whole

estate, to the exclusion of his numerous nephews and nieces. Such a reading would be an absurdity, and we are, therefore, compelled to read *or* as *and* in this connection, to give effect to the plain and obvious intent of the testator. Such construction is rendered imperative, by the restriction that the child or children of a deceased nephew or niece should take only its parents' share. The word *and* is therefore to be substituted for the word *or*, and the authorities abundantly sustain such an alternative. (*Roome* v. *Phillips*, 24 N. Y., 465, and cases there cited.)

It follows from the considerations and authorities already referred to, that to effectuate the testator's intention, we are authorized to give the most liberal construction to the word "*leave*," and read it as though the word "*have*" had been written instead. To give full effect to such intention of a testator, words and limitations may be transposed, supplied or *rejected*.

Chancellor Walworth enunciates this doctrine in *Pond* v. *Bergh* (10 Paige, 152), citing numerous authorities to sustain it. He says the cases are numerous which show that eminent judges have, in many instances, taken much greater liberties in construing wills to effect the testator's intention, than we are called upon to take in the present case to accomplish the same object.

The case of *Mogg* v. *Mogg* (1 Mer., 654) is a notable one. There a testator devised his estate to trustees, to pay the income thereof to the support of the children of his daughter, Sarah Mogg, during her and their lives, and the life of the survivor of them, and after their decease, he devised the estate "to the lawful issue of *such* children," "as tenants in common." At the death of the testator, his daughter, Sarah Mogg, had four children, and after his death she had five more. After argument by distinguished counsel, it was held and certified to the Court of Chancery, by the judges of the Queen's Bench, and such certificate was approved of by Sir William Grant, master of the rolls. 1. That *all* the nine children of Sarah Mogg were entitled to share in the income. 2. That, on the death of the survivor of these nine children, the estate vested in the issue of the *four* children, who were

living at the testator's death, to the exclusion of the issue of the *five* children born afterward. It is to be observed, that the language used as to the limitation, applied to the issue of *such* children as were to participate in the rents and income during their lives, but the construction given to it by the judges and the master of the rolls confined the limitation over to the issue of a part of such children, namely, to the issue of the children born before the death of the testator. If it had been construed as a limitation to the issue of all the children of Sarah Mogg, it would have created an illegal perpetuity, and would, therefore, have been void, because it would have rendered the estate inalienable, during lives not in being at the testator's death. But, by giving to the language used a construction contrary to the literal and ordinary meaning of it, yet obviously in harmony with the testator's intention to make a valid disposition of his estate, the limitation was reconciled with the law and carried into effect.

The following cases, I think, fully sustain the construction which, in my opinion, should be given to the present will. (*Woodcock* v. *Duke of Dorset,* 3 Brown Ch., 569 ; *Hope* v. *Lord Clifton,* 6 Ves., 499 ; *Powis* v. *Burdett,* 9 id., 428 ; *Maitland* v. *Chalie,* 6 Mad., 153 ; *In re Tookey's Trust,* 11 Eng. L. & Eq., 60 ; *Collin* v. *Collin,* 1 Barb. Ch., 630.) In some of these cases the proper signification to be given to the words "*leaving*" or "*leave*" is considered, and the circumstances under which, to give effect to the testator's intention, the words "*having*" or "*have*" may be substituted for "*leaving*" or "*leave.*"

In *Woodcock* v. *Duke of Dorset* (*supra*), Lord Chancellor THURLOW said : "Though the words are strong and difficult to manage, the intention of the settlement is the truth and honor of the case," and he decreed accordingly.

In *Powis* v. *Burdett* (*supra*), Lord ELDON said, that, upon the clause as to the portions, the whole difficulty arises from the word "leave," for if the expression was "have," or any term not expressing the circumstance of surviving the father, it would be clear. He, therefore, held, to carry out the

intention of the testator, the word "leave" should be read as "have."

In the case of *Tookey's Trust*, the devise over, after the termination of the life estate, was in these words: "But, in case my said daughter Henrietta shall happen to die without *leaving* any issue of her body lawfully begotten," then he gave and devised certain lands unto "all and every such child or children of my body lawfully begotten as I shall leave or have at the time of the decease of my said daughter Henrietta, and to their heirs," &c. The question raised was whether I. Tookey, the son, and Henrietta Tookey, the daughter, and children of the testator's daughter Henrietta, took absolute and devisable estates in remainder in this property, under the will of their grandfather, they having died in the lifetime of their mother Henrietta.

Vice-Chancellor KINDERSLEY, in delivering his opinion that the children of Henrietta took vested interests as tenants in common in fee, observed, "Henrietta, the testator's daughter, had two children, who both pre-deceased her, both were married, and one grandchild had survived her. It appears to me that the testator, in that part of the devise, has used the word 'leave' in the sense of 'have,' and the meaning of the word 'leave' has been applied to it in other cases, and I have not the least doubt that that was the meaning of the testator here, and he had regard to the natural course of events that the children might survive the parent, but not a condition that they should do so. At all events, it gives a reasonable construction to the will; for, if that were not the construction, the testator would have died intestate from and after the death of his daughter Henrietta. I do not mean to say that is a conclusive reason for a forced construction of the words, but it is one which helps the construction and has weight in confirming the view I take of the devise itself." These observations of Vice-Chancellor KINDERSLEY are pertinent to the case now under consideration.

It is very apparent from the tenor of this will that the testator had in his mind the contingency that he might survive both

his brother and sister, and this consideration is entitled to weight in construing the language of the will.

In *Collin* v. *Collin* (*supra*) it is declared that the general rule is, that when the estate is to be distributed among a class, at the death of a testator, those who are in *esse* at the time, and no others, are entitled to share in the distribution. But when the distribution is to be made among a class at the death of a particular person, or upon a contingency, or at any other time, subsequent to the death of the testator, all who answer the description at the time appointed for the distribution will be entitled to share in the fund. And when the language of the will indicates a present bequest of a fund which is to be distributed at a period subsequent to the death of the testator, those who are in *esse* at the time of his death will take vested interest in the fund; but subject to open and let in others who may come into being so as to answer the description and belong to the class at the time appointed for the distribution.

From these considerations and authorities we are authorized to deduce the following propositions: 1. That when the language of a testamentary provision admits of two constructions, one of which would render it legal and operative, and the other illegal and void, it should be presumed, in the absence of any clear expression of a different intent, that the words of the testator were used in a sense in harmony with the law.

2. That it is the duty of the courts, so far as the rules of law will permit, to give effect to the manifest intent of the testator, as deduced from the language of the instrument, read in the light of the circumstances which surrounded him at the time of its execution; and when it is apparent that particular words have been inadvertently used, in an inexact and ambiguous sense, they should be read in the actual sense in which they were employed by the testator, though this may vary from their ordinary and primary import.

3. That when a testamentary gift is made to the children whom a designated party may leave, the word *leave* may be construed as equivalent to the word *have*, where it is evident

from the general tenor of the will that this was the sense in which the word was used by the donor, and when a different construction would disappoint the intended disposition of his property, and defeat the gift as illegal.

Applying these views and the doctrine of these cases to the facts existing in the case at bar, it follows that all the children of the brother and sister of the testator, named in his will, living at the time of the testator's death, and any child or children of any such deceased nephew or niece, living at his death, took a vested remainder in fee in the estate devised, subject to the life estates of the testator's two daughters, and subject also to be wholly divested upon either of said daughters dying leaving lawful issue, and subject also to the opening thereof to let in any children of his said brother and sister born after the death of the testator.

The judgment of the Superior Court of New York should therefore be reversed, and the judgment of that court at Special Term should be affirmed.

WRIGHT, HUNT and MORGAN, JJ., dissented.

Judgment reversed.