· (23 Misc. Rep. 739.)

COGAN et al. v. McCABE et al.

(Supreme Court, Special Term, New York County. June, 1898.)

·1. WILLS—CONSTRUCTION—VESTED OR CONTINGENT REMAINDERS.
     A testator devised a life estate in trust for his widow, and on her death the estate was to be converted into cash, and one-fourth of the proceeds paid to his son, or his heirs in the event of his prior death; one-fourth to testator's daughter, or her children in the event of her prior death; one-fourth to the children of a deceased daughter; and the rest was to invested, and the proceeds applied to the support of the wife and children of another son until his youngest child should attain the age of 21 years, when the share so invested should be divided among them. *Held*, that the remainders were contingent.

:2. SAME—DESIGNATION OF BENEFICIARIES—LAWFUL HEIRS.
     Where a testator devises land in trust for his widow, to be sold on her death, and a part of the proceeds paid to testator's son, or to his "lawful heirs" in the event of his prior death, and such son dies prior to the demise of the widow, without issue, his share goes to the heirs of his blood, and children of deceased brothers and sisters take per stirpes.

·3. SAME—LAPSE OF DEVISE BY DEATH.
     A testator devised a life estate in trust for his widow, and on her demise the property was to be sold, and the income from a share of the proceeds applied to the support of the wife and children of testator's son H. until the youngest child attained the age of 21 years, when such :share was to be divided among them. The wife and child of H. living at the time of making the will died before testator, and, at the time ·of his death, H. had married again, and his wife had a child en ventre sa mere. Subsequently three children were born to her, two before and one after the widow's death. *Held*, that the second wife and her children were entitled to take as legatees.

4. PERPETUITIES—SUSPENSION OF POWER OF ALIENATION.
     Said bequest was not void as suspending the alienation of the estate for a life not in being at the testator's death; the phrase "youngest child" meaning youngest child living at the time of testator's death.·

5. EMINENT DOMAIN—COMPENSATION—APPORTIONMENT BETWEEN LIFE TENANT AND REMAINDER-MAN.
     Where, under a will devising a life estate in trust, with remainder to testator's children, the trustees collect damages sustained by the property through the operation of a railroad on a street in front of same, the portion of the damages representing loss of rents accrued before the termination of the life estate is payable to the beneficiary of the life estate, or her representatives, and the portion representing damages to the fee is payable to the remainder-men.

·6. RELEASE—CONSTRUCTION—RENT—DAMAGES.
     Under a will devising a life estate in trust, and directing the trustees to collect the rents and income, and pay the same to the beneficiary, the trustees collected damages from a railroad company for operating its road on a street in front of the property, the damages being for diminished rental value, and the cestui que trust, in her will, released the trustees from all liability for rents collected by them from such property. *Held*, . that the testamentary release did not estop her executor from claiming the amount collected by the trustees for damages to the rental value of ·the property.

7. TRUSTS—ACCOUNTING—NECESSARY PARTIES.
> The personal representatives of the beneficiary of a life estate are necessary parties to the settlement of the trustees' accounts by the surrogate court.

Action by John Cogan and another, as executors under the will of Henry Cogan, deceased, against Annie E. McCabe and others.

R. Dudensing, for plaintiffs.

James A. Dunn, Holt & Gaillard, John Widdecombe, and Geo. W. Stake, for defendants.

COHEN, J. This action is brought by the trustees under the will of Henry Cogan to obtain a settlement of their account of their proceedings to date, and the judicial construction of the will now made necessary by the death of the testator's widow, and the partial distribution of the estate directed to be made upon the occurrence of that event. By his will, the testator, after bequeathing to his widow his "furniture, books, and all other personal property," devised all his real estate (being three lots at the southwesterly corner of First avenue and East Eleventh street, in the city of New York) to his executors in trust, to collect the rents and profits thereof, and, after paying all charges for interest, taxes, and insurance, to pay the net income to his wife during her life, and, after her decease, to sell the said real estate, and—

"The net proceeds of said sale to divide into four equal parts or shares. * * * (3) To pay one share or fourth part * * * to my son James Cogan; or, in the event of his death before my said wife, to his lawful heirs. (4) To pay one share or fourth part * * * to my daughter Catherine, wife of Patrick McCabe, or, in the event of her death before my wife's death, to her surviving children, to be divided equally between the said children. (5) To pay one share or fourth part * * * to the surviving children of my deceased daughter, Mary Ann, who was the wife of Cornelius Burns, to be divided equally between said children. (6) To invest the remaining share or fourth part of said net proceeds of said sale, and to apply and pay the net income thereof towards the support and maintenance of the wife and children of my son Henry Cogan, free from his control or interference, until his youngest child shall have attained the age of twenty-one years, when the said one-fourth part is to be divided equally between the children of said Henry."

The general scheme of this will is clear and consistent. During the widow's life the testator's real estate is to be kept intact, and the rents applied to her support. Upon her death it is to be sold, the proceeds to be divided into as many shares as the testator had had children; and these children, or the persons then representing their stock, are each to receive one share, except that the son Henry was, for some reason satisfactory to the testator, set aside as the representative of his stock, and his wife and children designated as such in his stead, and the trust, as to their share, continued until all should be old enough to be properly intrusted with the control of their property. To this general intention of the testator, perfectly apparent on the face of the will, and a wholly competent exercise of his testamentary powers under our statute, it is the duty of the court now, if possible, to give effect. Though in any of the minor features of the scheme the testator's intentions appear in

doubt, or even, upon the surface, to be such as the law does not sanction, yet if, without violence to his language, a construction can be put upon it which will keep him within the limits of the law, and at the same time execute his "will" as he has declared it, that construction the court must adopt. The testator is presumed to have known the law, and presumed to have intended to respect it; and this latter presumption will yield only to plain evidence of the contrary in the words he has adopted. Butler v. Butler, 3 Barb. Ch. 304; Dubois v. Ray, 35 N. Y. 162; Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933.

When the will was executed, on July 30, 1883, the testator's wife, and their sons, James and Henry, and their daughter Catherine McCabe, were living. Another daughter, Mary Ann Burns, had died, leaving three children, Catherine Irene, Harry Joseph, and Ellen Veronica. The son James was childless and unmarried. Henry was married to one Margaret Costello, and there was living one child of this marriage, Annie Cogan. The testator died January 4, 1886. In the meantime his son Henry's wife and child had died; and a second wife, Georgina, was already some five months with child by him. This child, the defendant Eleanor T. Cogan, was born on the May 13th following. The testator's widow died March 10, 1895. By that time the son James had died, still childless and unmarried; the daughter, Catherine McCabe, had died, leaving four children, the defendants Annie E., Nellie G., Julia A., and Henry McCabe; and to Henry Cogan and his wife had been born, besides Eleanor T., the defendants Irene E. and Edward Cogan. They have now still another child, the defendant Henry De Witt Cogan, born since the death of testator's widow.

The first question to be determined is whether the remainders limited to the different defendants upon the life estate of testator's widow are vested or contingent. Recognizing to the full the disposition of our courts, of which the case of Hersee v. Simpson, 154 N. Y. 496, 48 N. E. 890, is the most recent illustration which has come to my notice, to consider no remainder a contingent one, "where, consistently with the intention of the testator, it may be construed as being vested," it is nevertheless clear that these remainders cannot be so construed. There is no gift to any of these remainder-men; only a direction to pay or divide certain sums to and among them "after the decease of my said wife." At the death of the testator, and for some time afterwards, at least, it was wholly uncertain whether the "heirs" of James Cogan, or the children of Catherine McCabe, would ever take at all. Until the death of the widow, "the property was not even in existence in the form in which it was to reach the beneficiaries." To repeat the quotation of the court of appeals in Vincent v. Newhouse, 83 N. Y. 505:        .

"We may say here, as was said by the master of the rolls in Hoghton v. Whitgreave, 1 Jac. & W. 146, 'not only was there no bequest before the widow's death, but the subject-matter did not then exist, in the shape and form in which it is given.'"

And it may be added, changing to the language of the appellate division in Geisse v. Bunce, 23 App. Div. 289, 48 N. Y. Supp. 249:

"If the rule [above referred to, for distinguishing a contingent from a vested remainder] were not applied here, it might well be thought to have no substantial existence at all."

In support of the contention of the defendant Henry Cogan for a contrary construction, reference is made by him only to the case of McGillis v. McGillis, 11 App. Div. 359, 42 N. Y. Supp. 921. It is noteworthy that upon the appeal to the court of appeals in that case that court held that, "upon a proper construction of the will, the remainder was contingent, and not vested." Id., 154 N. Y. 532, 543, 49 N. E. 145, 148.

While these considerations perhaps apply with especial force to the remainders created in the two shares of the heirs of James Cogan and the children of Catherine McCabe, the difference in the wording of the limitations of the remaining two shares is not sufficient to permit of a different construction of them. It is clear, therefore, that no interest vested in any of the remainder-men until the death of the widow, as of which time the conversion of the real estate, and the direction to divide its proceeds, took effect; believing that this construction not only follows the rules of law applicable to the language employed, but is the one best adapted to carry out the actual intentions of the testator. It follows that under these remainders only those members of the different classes take who were in existence at the prescribed time of distribution. Tucker v. Bishop, 16 N. Y. 402; Teed v. Morton, 60 N. Y. 502; Stevenson v. Lesley, 70 N. Y. 512; Kilpatrick v. Barron, 125 N. Y. 751, 26 N. E. 925. The gift being only of the proceeds of real estate when sold, by the words the "lawful heirs" of James Cogan the testator must be held to have intended those of his kindred or blood who took by the statute of distributions. Tillman v. Davis, 95 N. Y. 17; Woodward v. James, 115 N. Y. 346, 22 N. E. 150; Lawton v. Corlies, 127 N. Y. 100, 27 N. E. 847. The gift taking effect only on the death of the mother, the share of the son James Cogan is payable, therefore, one-third in equal shares to and among the four children of his sister Catherine McCabe, defendants in this action, one-third in equal shares to and among the three children of his sister Mary Ann Burns, defendants in this action, and the remaining one-third to the defendant Henry Cogan. The shares of the daughters, Catherine McCabe and Mary Ann Burns, are payable in equal shares to and among their several children, respectively.

It is with reference to the disposition of the remaining share, set apart for the benefit of the wife and children of the son Henry Cogan, that the chief question in the action arises. It is urged, by certain of the parties who would benefit by such a construction, that as the wife and child of Henry Cogan, who were in existence at the time the will was executed, both died in the lifetime of the testator, this bequest lapsed in toto, and that for this reason as to this one-fourth share the testator died intestate. On the part of other defendants it is urged that the limitations of this share suspend its alienation, not only for the life of the widow, but for another life not in being at the death of the testator, viz. that of the youngest child of Henry Cogan, who might not be, and in fact was

not, born or begotten until long afterwards; and that the same result follows as before. The counsel for the trustees, on the other hand, endeavors to save the gift by the theory that as the testator should be held to have intended, by "youngest child," "youngest child living at my death," and as there was none then living, the limitation was in fact but for the single life of the testator's widow, upon whose death the share vested in the three children then living of Henry Cogan, to the exclusion of the fourth child, Henry De Witt Cogan, not born until a year afterwards, as well as of all possible future children. Bearing in mind the cardinal principles before reverted to, that the testator is presumed to have known the law, and that an intention to make an illegal limitation is not to be imputed to him unless his language on the point be so unambiguous as to compel the court, however reluctantly, to recognize it as such, and deal with it accordingly, there seems no great obstacle in the way of giving practically complete effect to the benevolent intentions of the testator towards the children of his son Henry and their mother. Whatever embarrassment, under the earlier cases and text-books, might be found in the way of holding the second wife of the son Henry to have been substituted, by the force of her marriage, as a legatee under the testator's will in the place of the first wife, living at the time of its execution, were that the bare question presented, I am largely relieved from by express evidence in this will of the testator's general intention on the subject. By providing, not merely for the "child" of his son Henry in being at the date of the will, but for "the children" the son might have in time to come, the testator affirms his intention to embrace them all in his benevolence; and those born of the second wife come no less literally under the limitation than would the daughter of the first wife, had she not so speedily followed her mother to the grave. The children of the second wife being, then, in my opinion, undoubtedly entitled to take, their taking seems inevitably to involve the sharing of their mother also in the testator's provision for the support of the family during their minority; for it is only for that period and while acting, as it were, as nurse for her infant brood, that the testator includes her in his bounty, recognizing that during that period her presence and co-operation would be essential to the attainment of his object with regard to the infant children. In other words, the testator's intention in providing "for the support and maintenance of the wife and children of my son Henry Cogan" would have been equally well expressed by the phrase, "for the support and maintenance of the children of my son Henry, including the support and maintenance of their mother so long as she shall maintain a home for them during the minority of the youngest of them." To such a limitation, however, the objection is made that it involves a suspension of alienation during the life of the widow, and also the lives of several children, not all of whom were even in being at the testator's death. But if, in the absence of evidence elsewhere of a contrary intention, we are at liberty to understand by the phrase, "until his youngest child shall have attained the age of twenty-one," "until his youngest child living at the time of my death shall have attained the age of

twenty-one," the objection fails. There seems to be ample authority for such a construction. In Butler v. Butler, 3 Barb. Ch. 304, the testator gave a sum in trust to invest and pay over the income to a life tenant "until her eldest child should arrive at the age of twenty-one years, and at that period to divide the same, as it may exist, into as many shares as there may then exist children of the said S. M. Butler, and to pay over to each child his or her share on arriving at the lawful age of twenty-one years." At the death of the testator the life tenant had four children living. It was held that by the "eldest child" the testator referred to the eldest child at the time of making the codicil, and not the eldest child which she might have who should attain the age of twenty-one. "For in the last case," said the chancellor, "the power of alienation might be suspended for more than two lives in being at the death of the testator, before the contingency would happen by which the estate in remainder would vest in interest. And in the construction of wills, if the language of the testator is such that it may be construed in two different senses, one of which would render the disposition made of his property illegal and void, and the other would render it valid, the court should give that construction to his language which will make the disposition of his property effectual." In Dubois v. Ray, 35 N. Y. 162, the testator, who left, him surviving, two children, gave his property to them for life, with remainder, in case they both died without issue, "to the children whom my brother Robert Ray and my sister Mary King may leave." It was considered that the remainder could only be saved by reading the words "may leave" as equivalent in intention to "may have at the time of my death"; and such was the construction adopted. In Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257, the trust deed directed distribution "when the youngest of said [three] surviving children shall come of age," a life estate for the life of the settlor having been first created; and it was held that the survivorship was "that existing at the date of the death of the settlor, and that the consequent duration of the trust is during the life of the settlor, and the minority of the youngest of the three children living at his death." In Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933, the testator provided that "on the arrival of my youngest grandchild at the age of twenty-one years," and on the death of another life tenant, the property should be divided. It was held that there was meant the youngest grandchild "living at the time of my death." The court said:

"If a general scheme can be found to have been intended, and provided for in the instrument, and such general scheme is consistent with the rules of law, and so may be declared valid, it is the duty of courts to effectuate the main purpose of the testatrix. To accomplish such object, the meaning of words and phrases used in some parts of the will must be diverted from that which would attach to them if standing alone, and they must be compared with other language used in other portions of the instrument, and limitations must be implied, and thus the general meaning of all the language must be arrived at. We are impressed, in common with the courts below, with the exceeding difficulty attending a construction of this will. A construction quite inconsistent with that which has been here adopted might be supported by many and weighty arguments. It would, perhaps, come as near to the intention of the testatrix as the one we have adopted. But

it would also render the trust illegal, and utterly destroy the provisions of the will. The construction which has been herein adopted brings us, as we think, quite as near the intention of the testatrix as the other would have done; and neither construction can be said to do violence to her intention, so far as that intention can be discovered from a most attentive examination of the instrument itself. This makes it a strong and clear case for the application of the doctrine already alluded to, and brings us to the point of adopting that construction which, while doing no violence to the intention of the testatrix, at the same time sustains the trust and the devise mentioned in the will, rather than defeats them."

The assumption of the proposition, which the foregoing cases have been cited to support, was that there were no expressions elsewhere in the will inconsistent with the construction suggested. This is not wholly true of the will in the case at bar, and it is therefore not altogether free from the difficulty which for the same reason the court recognized in the case last cited. To quote the language of the will once more, the limitation is—

"To the wife and children of my son Henry * * * until his youngest child shall have attained the age of twenty-one years."

The difficulty becomes apparent when we express more fully the apparent meaning of the testator's words:

"To the wife and children of my son Henry, both those who may be living at the time of my death, and any who may be subsequently born or begotten during the continuance of the trust hereby created, until the youngest of such children shall have attained the age of twenty-one years."

In order to sustain the limitation, it is evident that the words "such children" must be deprived of their ordinary function of carrying over to the second clause the significance given to the same words in the antecedent one, and be held, instead, to relate to one only of the two classes of children there described. The court of appeals has recently had occasion to observe (Trust Co. v. Black, 146 N. Y. 1, 13, 40 N. E. 403, 406) that:

"We cannot say, as a matter of law, that testators always mean precisely and definitely the same thing when they use the same expression in different parts of their wills. It is a good rule to say that generally they do. It is always, however, a question of intention."

That in the use of the phrase "such children," following a reference to children begotten both before and after the testator's death, the testator should, where otherwise his gift would fail for invalidity, be considered to intend only those begotten in his lifetime, was the exact point upon which turned the "notable case" of Mogg v. Mogg, 1 Mer. 654, cited and approved in Dubois v. Ray, supra. Mogg v. Mogg came before the master of the rolls in 1812, and, upon a case stated by him, before the king's bench. It was elaborately argued before both courts, and both concurred in their construction of the will. In it there were a number of different limitations to be considered, only two of which need be noticed here. The testator's real estate at High Littleton he devised upon certain trusts during the life of his son, and, in default of issue of the son, "from and after the decease of the son" the testator gave and devised the principal and accumulations "unto and equally among the child and children begotten and to be begotten on the body of his daughter

Sarah Mogg during his, her, and their life and lives; and from and after the decease of such child and children I give and devise the same unto the lawful issue of such child and children of my said daughter Sarah Mogg, to hold unto such issue, his, her, and their heirs, as tenants in common." Other real estate, known as the "Mark Estate," the testator devised in trust to "equally pay and apply the issues and profits thereof towards the support and maintenance of the child and children begotten and to be begotten of his said daughter Sarah Mogg during his, her, and their life and lives; and, after the decease of such children, he gave and devised the said estate to the lawful issue of such child and children of his said daughter Sarah Mogg, to hold unto such issue his, her, and their heirs, as tenants in common, without survivorship." The son survived the testator, and died without issue. At the date of the will, Sarah Mogg had two children living. At the testator's death, two others had been born. At the death of testator's son, another had been born, and a sixth was en ventre sa mere. Afterwards still three others were born. As to the estate of High Littleton, it was held, in the first place, that by the gift, after a precedent life estate or life estates, to his daughter's children, with remainders to their issue, the testator must, under the rule in Shelley's Case, be considered to have given to his daughter's children estates in tail general; and, as such a devise could be made only to persons in esse at the determination of the precedent life estate, to have intended, by this devise to children begotten and to be begotten on "the body of my daughter Sarah Mogg," "children begotten and to be begotten on the body of my daughter Sarah Mogg during the life of the life tenant," and hence that it was a valid remainder to the six eldest children, including the one en ventre sa mere at the son's death, but excluding the three subsequently born. As to the Mark estate, the limitation was considered to be governed by the rule that life estates to persons not in esse could be created only if the remainder vested eo instante on the death of the testator. It was held that while the testator's words in the gift of the life estate, "to the child and children, begotten and to be begotten, of his said daughter Sarah Mogg, during his, her, and their life and lives," must be allowed to include, in accordance with the testator's plain intention, all the nine children,—those born after as well as before his own death,— yet the reference in the clause immediately following, in which "he gave and devised the said estate to the lawful issue of such child and children" of his said daughter, must, to save the remainder, be intended to be to "such child or children begotten or to be begotten," etc., "and living at the date of my death." And it was adjudged, accordingly, that the nine children "took, as joint tenants, an equitable estate, for their lives and the life of the survivor," in the Mark estate, "with remainder in fee simple to the issue, collectively, of the four eldest of such children" (being the children born in the lifetime of the testator). This case appears to have opened a path of judicial construction in the direction which the court is obliged to take, and considerably beyond the point to which it is obliged to go, in order to sustain the limitation in question in the case at

bar. That accordingly is held to be for the joint lives of the testator's widow, and for the minority of his grandchild, the defendant Eleanor T. Cogan, for the use of the widow during her life, and after her death for the use of the defendant Georgina T. Cogan, and her children born and to be born during the existence of the trust, with remainder to such children, contingent upon their surviving until the termination of the trust, by the defendant Eleanor T. Cogan attaining her majority or dying during her minority. Whatever question may at one time have existed as to the validity of a limitation upon the life of an infant born after the death of the testator, but en ventre sa mere at the time, I understand to have been finally set at rest by the famous case of Thellusson v. Woodford, 4 Ves. 227; Id., 11 Ves. 112. There the limitation was not only upon the lives of such infants, but for the benefit of third persons, and its validity was affirmed in all the courts after exhaustive arguments by most learned counsel.

A minor question is presented concerning the disposition of the net proceeds of one of the usual equity suits against the elevated railroads, in which the plaintiffs received damages for loss of rents occasioned to the trust property by the maintenance and operation of the railroad, and, upon the conveyance of the easements taken, were paid a further sum, supposed to represent their value. Such proportion of the net proceeds as represents rental damages which accrued before the death of the widow is payable to her executor or administrator, one-fourth of the remainder of the rental damages to the use of the defendant Georgina T. Cogan and her children, and the remaining three-fourths, together with three-fourths of the sum representing the award for fee damages, among the representatives of the other three stocks in the same manner as their shares of the main trust fund. The remaining one-fourth of the award of fee damages constitutes a part of the fund to be held in trust during the minority of the infant Eleanor T. Cogan. The defendants McCabe contended, however, that by the will of Mrs. Cogan, which is in evidence, she has estopped herself and her estate from claiming any portion of the proceeds of this suit. This position is not sound. Mrs. Cogan, in her will, says, in effect, that by arrangement with the trustees she has collected directly, instead of through them, the rents of the real property; and she therefore releases them from all liability for such rents as they, owing to that arrangement, did not collect. This is very far from releasing them from liability to account for certain damages, in the nature of rents, which not only she herself did not, but which they did, collect. Mrs. Cogan's personal representatives are not, however, parties to this action; and their absence is pleaded as a defense in the answer of Henry Cogan, the general legatee under her will. It is obvious that, until they be brought in, the plaintiffs cannot obtain the complete discharge they seek. Their attorney may present an order providing for the issue of a supplemental summons to the executor or administrator c. t. a., as the case may be, requiring him to answer the complaint and the necessary supplemental complaint. Let the order recite the trial, and the conclusion of the court that without the presence of this

executor or administrator a complete determination of the controversy cannot be had, and direct that the trial stand over until such executor or administrator shall have been brought in, and shall have interposed his answer or demurrer. Peyser v. Wendt, 87 N. Y. 322; Hood v. Hood, 85 N. Y. 561. Or if he shall default, or raise no issue for trial by his answer, and if none of the present defendants themselves shall by their answers to the supplemental complaint raise new issues for trial, then, upon that fact being made to appear to the court, a decision (in short form) and an interlocutory judgment may be presented for settlement, construing the will in accordance with this opinion, and appointing a referee to take and state the account of the plaintiffs, upon the coming in of whose report final judgment may be entered directing distribution, and settling the account of the plaintiffs, and making such award of costs as may then be considered proper. In case the plaintiffs shall fail within a reasonable time to bring in the executor or administrator c. t. a. of Mrs. Cogan, the parties will be heard upon the question whether the complaint should be dismissed in toto, without prejudice to a new suit, or whether the plaintiffs may take a judgment construing the will, but refusing to take or state their account.