ment, when the character of the instrument was withheld, and not communicated to the witnesses. The legislative intent was that a declaration should be made by the testatrix, either in words, or by signs, to the witnesses, of her understanding of the nature of the instrument, and a publication of will requires that the testatrix declare, in some comprehensible way, that the instrument was her will. Matter of Turell, 166 N. Y. 330, 59 N. E. 910.

[2] While no objections are filed, and the only persons appearing ask that this alleged will be admitted to probate, there are a number of next of kin who do not appear. Section 2622 of the Code of Civil Procedure provides that, before admitting a will to probate:

"The surrogate must inquire particularly into all the facts and circumstances, and must be satisfied of the genuineness of the will and the validity of its execution."

It is to be regretted that the alleged will, intended to contain the testamentary disposition of decedent's property, must be rejected by reason of a failure to comply with the requirements of the statute; but these requirements have been long in existence, are easily understood, were made to protect persons making wills, and have served a beneficial purpose for many years, and no substantial departure therefrom can be justified to help out any special case. Judge Bartlett, in Matter of Andrews, 162 N. Y. 5, 56 N. E. 530, 48 L. R. A. 662, 76 Am. St. Rep. 294, said:

"It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements. It is better this should happen under a proper construction of the statute than that the individual case should be permitted to weaken those provisions calculated to protect testators generally."

The alleged will cannot be admitted to probate, for the reason that there was no publication as required by statute, and consequently no will.

Probate denied.

(86 Misc. Rep. 569)

## In re SHARP et al.

(Surrogate's Court, Oneida County. July, 1914.)

1. WILLS (§ 525*)—CONSTRUCTION.
     Under a will providing that, "in case my life insurance * * * is not paid to my said wife, by reason of her not surviving me, and for that reason reverts to my estate, I give and bequeath the same in equal shares to my sisters, * * * my son * * * and daughter," testator's wife, who survived him, was entitled to all the insurance, where the evidence and other provisions of the will clearly showed that such was testator's intent.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1129–1139; Dec. Dig. § 525.*]

2. WILLS (§ 456*)—CONSTRUCTION.
     In construing wills, words must be given their ordinary meaning.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. § 974; Dec. Dig. § 456.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WORDS AND PHRASES—"REVERSION"—"REVERT."

The word "reversion," in a general sense, means "a returning." In law, it means the returning of an estate to the grantor, or his heirs, after a particular estate is ended. The word "revert" has the same meaning.

[For other definitions, see Words and Phrases, First and Second Series, Reversion; Revert.]

4. WILLS (§ 452*)—CONSTRUCTION—PROVISIONS FOR WIFE.

Provisions of a will for the benefit of a wife should be construed liberally in her favor.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 968–970; Dec. Dig. § 452.*]

5. WILLS (§ 460*)—CONSTRUCTION.

In construing a will to effectuate the testator's purpose as expressed in the whole instrument, the court may read its provisions in a different order from that in which they appear, and may insert or leave out provisions, if necessary in aid of testator's intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 979; Dec. Dig. § 460.*]

6. WILLS (§ 451*)—CONSTRUCTION OF CODICIL—VALIDITY.

The court should, if possible, so construe an ambiguous provision of a codicil as to uphold it, rather than to render it void.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 967; Dec. Dig. § 451.*]

Judicial settlement of the accounts of George W. Sharp and another, as executors of the estate of John E. Sharp, deceased. Decreed according to opinion.

Harold S. Whitehouse, for executors.

John S. Baker, of Rome, for widow and claimants.

Geo. E. Philo, of Utica, special guardian, for Frederick B. Smith, a minor.

SEXTON, S. On the final accounting herein, the claim of Drs. Reid & Stranahan for $111.75, also the claim of Fannie E. Sharp, as assignee of the legacy of $100 willed to John E. Sharp, Jr., and for $3,-000, the proceeds of policies of insurance, on the life of deceased, paid to the executors, were, by consent, tried by the surrogate.

On the undisputed evidence of John E. Sharp, Jr., the claim of Drs. Reid & Stranahan is hereby allowed at $105.

On concession made during the trial, I hold and decide that Fannie E. Sharp, as assignee, is the owner of the legacy of $100 given by decedent's will to his son, John E. Sharp, Jr.

[1] The third clause of the testator's codicil provides:

"Third. In case my life insurance in the Order of Railway Conductors is not paid to my said wife by reason of her not surviving me, and for that reason reverts to my estate, I give and bequeath the same in equal shares to my sister, Ida D. Tremain, my daughter Zema Smith, and son George W. Sharp."

The testator was insured in said Order of Railway Conductors for $3,000, which amount the surviving widow claims by virtue of the said third provision of the codicil. The executors refused to pay said amount to the widow on the ground that: ·

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"By the general or common sense of the words and phrases used by the testator, in this paragraph, no bequest was made to his wife, Fannie E. Sharp, of this insurance."

The intent of the testator might have been more clearly stated. Job, perplexed by the language of his tormentors, cried out:

"Who is this that wrappeth up sentences in unskillful words?"

Like Job, courts have their troubles. They will be puzzled by the diction of wills so long as the descendants of the Goddess Mutt continue to draw them.

The facts show that March 13, 1910, the deceased made a will, and his last sickness commenced December 20, 1911, during which his wife took entire care of him until March 7, 1912, when she was taken to a hospital on account of serious illness. June 6, 1912, the deceased modified his will by codicil, and died September 1st of the same year. On May 31, 1912, Mrs. Emma Brown, a nurse, took charge of the deceased. The next day Mrs. Sharp, wife of deceased, was taken home from the hospital, and she and her husband were cared for by the nurse until the husband's death, about three months thereafter. At first they occupied separate, opposite rooms, and "he always went in and kissed her good night." At first he stayed in her room part of the time, but as she improved "he got so he stayed in there all of the time, and slept right there. He wanted to stay in there with her entirely, and they stayed together in the bed, and slept there together."

McLaughlin, witness for executors, a conductor and friend of deceased, testified that he called on the testator during his last illness, and "that there was no trouble whatever between the deceased and his wife, and, so far as he learned, they were perfectly happy." The nurse never heard any dispute between them.

The codicil in question was drawn about a week after the return of the wife from the hospital, and while the relations just described were at fever heat. We have on the evidence:

"Two souls with but a single thought,
"Two hearts that beat as one."

And two executors urging that, while the deceased comforted his wife physically, he willfully poisoned her financially. Instances of testamentary neglect of wives, when the marital relations are tranquil, are as rare as consumption of the æsophagus.

It is the duty of courts to seek the intent, and, if it can be gathered from the language used, the wish of the testator should be reverenced and justice done. Sumner said:

"Justice is nothing but right applied to human affairs."

January 25, 1885, the testator took a benefit policy upon his life for $2,500 in the Order of Railway Conductors of America, payable to Ida L. Sharp, his first wife. In 1888, Fannie E. Sharp, the second wife, was made the beneficiary. July 1, 1891, in pursuance of the rules and regulations of said order, said policy was canceled, and three policies of $1,000 each were issued to John E. Sharp, deceased, in each of which he was named as beneficiary. After the death of the testator, $3,000, the total of said policies, was paid to his executors, George W. Sharp

and John W. Shepardson, who refused to pay it to the widow for the reasons stated.

It is urged by the executors that the testator supposed that his wife. was named as beneficiary in the last policies issued and would receive the amount of them if she survived him; hence the peculiar wording of the third paragraph of the codicil. By the will, a house and lot, with all the furniture and furnishings, were given by testator to his wife. He certainly knew that all of this property was in his name, yet in the second paragraph of the codicil he provides:

"In case my wife, Fannie E. Sharp, shall not survive me, then, in that event, I give and devise my house and lot mentioned in the third clause of said will, together with the furniture and furnishings, to my daughter, Zema Smith, absolutely forever."

It will be noted that this paragraph and the one contested are quite similar in form and phraseology. In the second paragraph of the codicil the testator gives his real estate to another, "in case my wife, Fannie E. Sharp, shall not survive me," and in the third paragraph of the codicil the testator gives his life insurance to others, "in case it is not paid to my said wife by reason of her not surviving me."

The testator clearly intended that his wife should have the house and lot and the house furnishings if she survived him. Did he not also intend that she should have his insurance if she survived him? It is urged that the clause in the third paragraph of the codicil, "reverts to my estate," indicates that the testator believed that his wife was named as beneficiary in the policies, and that the proceeds, if she outlived him, would belong to her; hence he intentionally used no words of a gift or bequest to her, and that from the wording of the said paragraph no gift or bequest can be inferred. In other words, if he knew that the insurance was a part of his estate at the time the codicil was made, he failed to employ language in a manner that would divest his estate of the same and place the title thereof in his wife, but did clearly give and bequeath the insurance money to Ida Tremain, Zema Smith, and George W. Sharp, to whom, the executors contend, the same should be paid.

[2, 3] In construing wills, words must be given their ordinary meaning. The word "reversion," in a general sense, means "a returning." In law, it means "the returning of an estate to the grantor, or his heirs, after a particular estate is ended." The word "revert" has the same meaning. Why should the testator have provided for a return of the insurance money to his estate, in case he survived his wife, if he knew that, at the time of making the codicil, it was no part of it? The word "revert" can have no legal meaning in the connection in which it was used, except upon the theory that the testator knew when using it that he was the beneficiary named in the insurance policies, the proceeds of which would come into his estate, and that by his codicil he was conditionally taking the money out of his estate, to which it would return in case he survived his wife, to be distributed to those named after her in said paragraph third of his codicil.

The deceased had been a conductor on the New York, Ontario & Western Railroad for many years, and so continued until about 9 months before his death; hence was, presumably, an intelligent man.

He belonged to the Elks, Masonic Order, and to the Order of Railway Conductors, and yet the executors ask the court to believe that he thought his wife was named as beneficiary in three different insurance policies, taken out by him July 1, 1891, in an order to which he belonged, and for which he presumably made written application. This theory is urged principally upon the wording of said third paragraph of the codicil, as no reliable evidence was given upon the subject.

[4] We have a man worth about $23,000, whose will and codicil were drawn by an attorney. The interests of his widow, who is sickly and old, and by whom he had one son, are involved in this accounting. By his will he left her a place in which to live. Did he intend to so word his codicil that the wife, who faced death in sexual service and fell sick soothing his throbbing brow, might, perchance, end her days in the frigid arms of charity. It must be assumed that he knew that he was the beneficiary named in the insurance contracts, "the contents of which he is presumed to have known." Skinner v. Norman, 18 App. Div. 609, 46 N. Y. Supp. 65. If the executors are right, then a sister of the deceased will receive one-third of the insurance, and a son and daughter the balance, to the exclusion of the wife.

"Provisions for the benefit of a wife should be construed liberally in her favor." Moffett v. Elmendorf, 152 N. Y. 476, 46 N. E. 845, 57 Am. St. Rep. 529.

Unless the testator intended that his wife should have his life insurance money in case she outlived him, no meaning can be given to the first three lines of the third paragraph of his codicil. In those lines he has used certain words and phrases which convey to the mind a certain meaning. Unless the testator intended that his wife should have this insurance, in case she outlived him, why did he mention her at all in said paragraph. There is no other rational meaning to be given to the expressions used, and the suggested construction must be adopted, or the words of the testator rejected as senseless or useless, a course which the law does not permit. In Matter of Vowers, 113 N. Y. 569, 21 N. E. 690, the court said:

"Undoubtedly, in every such case we must be quite sure of the testator's intention, and not substitute for it some notion of our own; but when his words leave no doubt about his intention, and can have no other reasonable interpretation, we are justified in upholding a legacy by implication, where no gift in express terms has been made."

[5] The executors are driven to the position that the lines and phrases referred to are superfluous, have no meaning, and indicate no intention on the part of the testator, and must be wholly disregarded, and that, too, in behalf of a sister, as against a wife for whom the law sedulously frames protection. Matter of Vowers, supra.

"At the threshold of every suit for the construction of a will lies the rule that the court must give such construction to its provisions as will effectuate the general intent of the testator as expressed in the whole instrument. It may transpose words and phrases and read its provisions in an order different than that in which they appear in the instrument, insert or leave out provisions, if necessary, but only in aid of the testator's intent and purpose—never to devise a new scheme or to make a new will." Tilden v. Greene, 130 N. Y. 31, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487; Phillips v. Davies, 92 N. Y. 200.

In pursuance of the foregoing power, I rearrange said third paragraph of said codicil to read as follows:

"I give and bequeath my life insurance in the Order of Railway Conductors to my said wife, if she survives me. If she dies, and for that reason it reverts to my estate, I give and bequeath the same in equal shares to my sister, Ida D. Tremain, my daughter, Zema Smith, and son, George W. Sharp."

In Roe v. Vingut, 117 N. Y. 206, 22 N. E. 933, the court said:

"I recognize the fact that, in order to obtain this reading, it is necessary to make some alteration in the third and sixth subdivisions and to supply some omissions. But in doing so it only serves to carry out the main purpose of the testatrix, which may be spelled out from the will itself."

[6] It may be that the meaning of the testator, as expressed in the third paragraph of the codicil, is involved in some doubt and obscurity; but it is the duty of the courts in construing such a provision to so interpret it as to uphold rather than to render it void. Hopkins v. Kent, 145 N. Y. 363, 40 N. E. 4; Roe v. Vingut, supra; Du Bois v. Ray, 35 N. Y. 162; Greene v. Greene, 125 N. Y. 512, 26 N. E. 739, 21 Am. St. Rep. 743; Post v. Hover, 33 N. Y. 601; Lytle v. Beveridge, 58 N. Y. 598.

It seems plain to the court that, if the testator did not intend that his wife should have his insurance money, he never would have mentioned her in the third paragraph of his codicil. I therefore hold and decide that Fannie E. Sharp, the widow of the testator, named in the third paragraph of the said codicil, is entitled thereunder to the proceeds of said three insurance policies, which it is conceded amount to $3,000, and the executors are directed to pay the same to her.

Decreed accordingly.